Arthur MacAuley and Eleanor MacAuley, Plaintiffs-Counter-Defendants-Appellees, v. Allen D. Rickel, Illinois Car Wash, Inc., a Corporation, and Auto Laundry Equipment Sales Co., a Corporation, Defendants-Counter-Plaintiffs-Appellants.

Gen. No. 67–127.

Second District.

June 20, 1968.

Miller, Thomas, Hickey & Collins, of Rockford, for appellants.

Roszkowski and Paddock, of Rockford, for appellees.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Plaintiffs, as the purchasers of a car wash business, sued for rescission of the contracts of sale, and for a recovery of sufficient monies to make them whole. From a judgment on a jury verdict in favor of the plaintiffs, granting rescission and a money judgment of $29,100, the defendants appeal.

Defendants urge that no actionable representations were made and that plaintiffs purchased the business with understanding of the risk involved. They further argue that error was committed in receiving the testimony of a former purchaser, in the refusal of an instruction, and in the failure to direct a verdict both at the close of plaintiffs' proof and at the close of all the evidence. Plaintiffs counter that the evidence established fraud in the knowingly false representations of the profitability of the business, of its monthly gross receipts and expenses, and of the condition of equipment sold, which were relied on by the plaintiffs to their damage.

The facts are that in February, 1966, an automobile washing business known as the Auburn Car Wash was being operated in Rockford, Illinois. The defendant Illinois Car Wash, Inc. was at that time the owner of the business and the tenant of the premises at which the business was operated, while defendant Auto Laundry Equipment Sales Co. owned the equipment used in the business. Both of the defendant corporations were prin-

cipally owned and controlled by the defendant Allen D. Rickel. At that time defendant Rickel placed an advertisement in a Rockford newspaper for the apparent purpose of finding a partner for the business. The plaintiffs, Arthur and Eleanor MacAuley, answered the advertisement, and discussions ensued with the view that MacAuley would invest in the business and become a partner-manager.

It should here be noted that MacAuley had previously worked as an accountant for approximately eighteen years, and had served in a managerial capacity in other businesses. At the time he began negotiations with defendant he was "semi-retired" but drew an annual salary and bonus from another business in Rockford.

The negotiations between the parties culminated in a general agreement whereby plaintiffs would purchase the business from defendants, operating under a sublease of the premises. At no time during these discussions did plaintiffs ask to see defendants' books pertaining to the business, nor did defendants offer these books for plaintiffs' inspection. According to plaintiffs, Rickel represented in the course of these negotiations that the business was "very profitable," and that plaintiffs would clear about $1,200 per month from the business operation. Rickel further allegedly represented that about 3,000 cars were washed each month in the business. It was further alleged that Rickel represented all of equipment to be "operable and that there was nothing about the equipment breaking down or anything like that."

Defendants denied that Rickel made any representations as to the profitability of the business or as to the number of cars washed there. Rickel, however, admitted stating that "all the equipment except the wheel washer was in A-1 condition." While Rickel testified that he offered to show MacAuley the records pertaining to the car count, it is unclear as to whether MacAuley actually

looked at these records. In any event, it is undisputed that MacAuley, from a vantage point across the street from the business, made random car counts of his own, although he did not actually record these on paper.

It is undisputed that the parties themselves wrote and rewrote the contracts of sale, although the plaintiffs tried without success to telephone their attorney prior to placing their signatures thereon. Mrs. MacAuley testified that when plaintiffs' attorney could not be contacted, Rickel "pounded on the counter and he said nobody leaves this building until I have this contract signed." This was denied by Rickel. Mrs. MacAuley further testified that, shortly after the contracts were signed, Rickel advised plaintiffs for the first time that the road on which the business fronted was to be widened. When Mrs. Mac-Auley expressed dismay at this information, Rickel allegedly said that "you should do a much better business with the road being wider and it will only be a matter of two or three days." In fact, according to Mrs Mac-Auley's testimony, the road was completely closed from six weeks to two months, during which time the business was closed for lack of access.

From the time the plaintiffs operated the business from late March, 1966, until the time of trial—a period of about nine months—they had taken no salaries, and in fact had drawn a total of only slightly more than $700, and had spent from $1,000 to $1,500 for equipment repairs. According to the testimony of their accountant, the plaintiffs' estimated net loss during this time, after allowance for depreciation and a salary of $650 per month, was $13,000. They filed their complaint below less than two months after acquiring the business.

For the reasons stated hereafter, it is the conclusion of this court that the judgment be affirmed.

■■■■ As noted, there is great dispute as to what representations were made by defendant Rickel. If plain-

tiffs' testimony is to be believed, there were representations as to profitability, gross receipts, expenses, the state of repair of the equipment, and the number of cars that could be expected to be washed. Obviously the jury chose to believe the plaintiffs, at least insofar as some of these representations were concerned, and the trial judge was sufficiently satisfied with the choice to enter judgment on the verdict. It is not for this court to conclude, as a matter of law, that both the jury and the trial judge believed the wrong witnesses. On the contrary, the trial judge and jury, having had the opportunity to hear the testimony and observe the witnesses, were in a better position, than we, to weigh the conflicting evidence and resolve questions of credibility. Stevens v. Fanning, 59 Ill App2d 285, 295, 207 NE2d 136 (1965). We cannot say, that viewing all the evidence, it so overwhelmingly favors defendants, that no verdict contrary to defendants could ever stand. Therefore, the court did not err in refusing to direct a verdict. Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 510, 229 NE2d 504 (1967).

Accepting the finding that defendants made the misrepresentations complained of, or even some of them, it would follow that actionable fraud would exist. Nowhere do defendants challenge the materiality of the misrepresentations, nor do they contend that plaintiffs did not rely thereon. These elements of fraud, therefore, are not before this court. Furthermore, we are not here concerned with misrepresentations as to *future* facts or promises, which are generally held not to be actionable. Brodsky v. Frank, 342 Ill 110, 117–118, 173 NE 775 (1930); Federal Deposit Ins. Corp. v. Wainer, 4 Ill App 2d 233, 237, 124 NE2d 29 (1955). Defendants' representations in this case, at least for the most part, related to *existing* facts, namely, that "it was a very profitable business," that the Auburn Car Wash "did three thousand cars a month," and that the equipment "was operable" and "was going good."

■ Defendants argue that the representations have not been shown to be false, but we do not agree. There was ample evidence in the record to sustain the finding that the business had not been a profitable one— and certainly not a "very profitable" one—either prior to or at the time of the transaction, and the evidence is uncontradicted that the plaintiffs suffered a net loss of $13,000 in the nine months thereafter. Similarly, there was evidence tending to show that the equipment was not in the good condition represented, and that the business had not been washing three thousand cars each month.

■ Defendants next contend that the trial court improperly permitted the testimony of one T. H. MacRoy, a former owner and operator of the business. MacRoy purchased the business from defendants on January 1, 1964, and operated it until mid-February, 1965, at which time he turned it back to defendants. During 1964, the unrefuted testimony was that MacRoy lost in excess of $25,000 in the venture.

Contending that the MacRoy testimony was immaterial and unduly prejudicial, defendants cite Burroughs v. Comegys, 17 Ill App 653 (1885), holding that a fraudulent sale of oats by the defendant to a third party was not competent to prove a separate fraudulent sale to the plaintiff. However, the MacRoy testimony was not admitted to show that defendants had perpetrated frauds in the past. Rather, this witness's testimony was more or less confined to the recent loss he had sustained in the business and to the fact that defendants were aware of his loss. We believe that this testimony was relevant to show the falsity of the representation that the business was profitable, and to show that Rickel knew or should have known it was false. Allin v. Millison, 72 Ill 201 (1874), is a case in point. There the plaintiff had purchased the rights to an invention from the defendant firm of Allin & Poston, through its agent, Leforgee. The

plaintiff thereafter brought suit in fraud for a recovery of his purchase price. In affirming a judgment for the plaintiff, the court said, at page 204:

"It is insisted that the court erred in admitting evidence in regard to other transactions with other persons who had made similar purchases of territory from Allin & Poston, and complaints by them to the defendants of the worthlessness of their purchases; *but this was proper for the purpose of affecting the defendants with the knowledge that the invention was without value,* and Leforgee with knowledge of the falsity of the representations alleged to have been made by him." (Emphasis added.)

A similar rationale is found in negligence cases, where it is held that "previous similar occurrences may be shown as evidence of defendant's knowledge, . . . ." Hays v. Place, 350 Ill App 504, 510, 113 NE2d 178 (1953). See also, Joseph Taylor Coal Co. v. Dawes, 220 Ill 145, 149, 77 NE 131 (1906).

 Defendants finally contend that the trial court erroneously refused to submit the following jury instruction tendered by defendants:

"If by an ordinary degree of precaution, the plaintiffs, the MacAuleys, could have ascertained the falsity of the representations complained of, then the plaintiffs are not entitled to recover. Whether or not the plaintiffs exercised due care and diligence to avoid being deceived is for you to determine."

In this connection, defendants cite cases for the proposition that "a party is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts." Schmidt v. Landfield, 20 Ill2d 89, 94, 169 NE2d 229 (1960). While this is undoubtedly a true statement of

the law, it is equally true that plaintiffs' reliance will be justified where, as here, the defendant possessed a superior knowledge of the facts represented. Thus, in Broberg v. Mann, 66 Ill App2d 134, 213 NE2d 89 (1965), on which defendants rely heavily, the plaintiff brought a suit for fraud in defendant's sale to him of eighteen acres of land which defendant had represented to contain twenty-six acres. In holding that no actionable fraud was proven, the court said, at page 144:

> "His actions were not 'calculated' to deceive the plaintiff. *The defendant possessed no superior knowledge of the acreage involved.* He furnished to the plaintiff and his attorney, a survey, which, if examined along with the preliminary report of title and the proposed deed, would have clearly indicated that plaintiff was not receiving 26.18 acres." (Emphasis added.)

In the case before us, the plaintiffs obviously did not have the same knowledge as defendants as to the profitability of the business, the condition of the equipment, or the number of cars that had been washed in the business. A different question would be presented if defendants' books had disclosed the business to be unprofitable, and these books had been examined by the plaintiffs, one of whom had extensive accounting experience. But the fact remains that the books had not been offered to plaintiffs. Further, we find no negligence in plaintiffs' failure to request an examination of the books. Plaintiffs had been advised that the business had been operated as a branch or division of defendant Illinois Car Wash, Inc., and that it was also being used for the experimentation of equipment and the training of other car wash employees. Under these circumstances, plaintiffs could reasonably have believed that the books would have been meaningless, and that an examination thereof would be a wasted exercise.

In any event, the court did give jury instructions tendered by both parties which clearly apprised the jury that they must find that the defendants made false representations of material existing facts, that the plaintiffs believed such representations, reasonably and justifiably relied upon them, and acted thereon to their injury. The failure to give the instruction in question, when viewed in the light of those actually given and defendants' right of closing argument thereon, was not prejudicial to defendants. Under all of these circumstances, therefore, we find no error in the trial court's refusal to give the instruction in question.

For the reasons stated, the judgment of the trial court will be affirmed.

Judgment affirmed.

DAVIS and MORAN, JJ., concur.