*In re* PETITION TO LEVY ASSESSMENTS—(COMMISSIONERS OF SALINE BRANCH DRAINAGE DISTRICT, Petitioners-Appellees, *v.* MARYROSE GROTH PILCHER *et al.*, Objectors-Appellants.)

(No. 12217;

Fourth District—April 25, 1974.

TRAPP, J., dissenting.

Hatch, Corazza, Baker & Jensen, of Champaign (Harold A. Baker, of counsel), for appellants.

Charles W. Hendrix, of Champaign, for appellees.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

This appeal is from a proceeding under the Illinois Drainage Code in which the commissioners of the Saline Branch Drainage District sought to levy assessments for annual maintenance work and additional drainage work. Following a hearing on the matter, the trial court found the proposed improvements were necessary and the court entered a judgment on the assessment roles of the drainage district. The objectors at the hearing appealed.

The issues on appeal are: whether the trial court erroneously restricted evidence of and gave too little consideration to esthetic, ecological and environmental consideration in passing upon the necessity and advisability of the proposed drainage work; and whether the trial court erroneously ruled that the drainage district had recorded title to an easement that amounted to a right-of-way in the land adjacent to the drainage ditch involved in the project.

The commissioners of the Saline Branch Drainage District filed a petition to levy additional assessment and to establish and levy annual maintenance assessment. The petition recites that the drainage district is comprised of approximately 11,320 acres and is adjacent to 981 subdivision lots; that the last assessment in the district was levied in 1935 with all assessments on the role then filed having been paid. The petition noted that it was necessary for the proper preservation of the drainage system that additional work be done on the drainage ditch at this time and that such annual maintenance as required in the future be done. The commissioners recited as reasons for the need for the work the alleged fact that the ditch was now "obstructed by debris, silt, broken tiles, aquatic growth, stumps and dead fall to such an extent that the hydraulic capacity and efficiency are greatly reduced * * *." The petition stated that in order to remedy the mentioned condition, the ditch in question should be cleared, and certain trees and vegetation growing next to the ditch should be removed. The petitioners estimated the cost of this work and the annual maintenance to be approximately $125,000 and $5,000, respectively.

Objections were formally filed opposing the petition. The objectors contended that the proposed plans were vague and uncertain in nature and extent concerning the work to be done on the ditch, and that it was questionable whether the benefits, if any, would exceed the cost of such work. The objectors alleged that the petition failed to contain sufficient information to ascertain if there were viable alternative plans that could be implemented in the renovation of the drainage ditch. The objectors stated that the proposed plan failed to consider such factors as a natural beauty and recreational potential of the area; and that the

destruction of one of the last wooded stream areas in Champaign County is a substantial factor in determining whether the proposed work is necessary or desirable. The objectors contended that the proposed plan would not solve the existing problem and that among other things it would result in additional erosion and landslides due to the deepening of the drainage ditch, thereby posing a threat to the property of abutting objectors.

On July 14, 1970, the hearing on the petition was commenced. The petitioners established that they had conducted a recent investigation of the condition of the drainage ditch. The results of this investigation showed that at some points the flow capacity of the ditch was only two-thirds of its 1937 capacity; but other portions of the ditch were free of debris. All petitioners' experts agreed that the ditch should be cleared of all trees and brush that were growing in the bed of the ditch, and that the bank areas within the right-of-way of the ditch should also be cleared; and that herbicides should be used to discourage regrowth of certain undesirable forms of vegetation.

It was also elicited through petitioners' witnesses that the present condition of the drainage ditch was such that an ordinary rainfall occasionally resulted in flooding over a portion of the district, including valuable farmlands. Also, the Champaign-Urbana Sanitary District's main treatment plant, which is located on the bank of the ditch, has been flooded several times when the drainage ditch overflowed its banks. As a direct consequence of this flooding, raw sewage flowed directly into the ditch. An engineer of the sanitary district contended that once the ditch was cleared of its debris the overflow problem would be abated. If the debris was not cleared from the ditch, it would be necessary for the sanitary district to build dikes and install diesel pumps or a storm sewer in order to avoid serious health hazards resulting from the dumping of raw sewage into the ditch. The sanitary district's engineer stated that the district agreed to pay approximately $60,000 of the cost of clearing the ditch.

The objectors called Professor Donald L. Walker, Jr., to testify. He stated that he was a professor of landscaping architecture at the University of Illinois, and that he had prepared an alternative plan for clearing the ditch which would entail the actual clearing of the bed of the ditch and the thinning of trees on the bank by the process of selective removal. He contended that his plan would increase the flow of the ditch and have the advantages of minimizing the erosion and eliminate excessive brush growth, yet preserve the natural habitat for wildlife and retain the physical visual beauty as well as the potential economical value of the trees. He admitted that his plans would elimi-

nate the use of a dragline as proposed by the petitioners because of the remaining trees on the bank would make such an operation impossible. His plan also eliminated the use of herbicides because he contended that they were pollutants. However, he admitted that if properly used, the herbicides were not injurious to man or animal.

Mr. John Goodell, a registered civil engineer, testified for the objectors that he had worked on farm drainage problems for a number of years and was a principal engineer for several drainage districts, including the Beaver Lake Dam District immediately upstream from Saline. He testified that he was familiar with both the Walker and the petitioners' proposals. He believed that the best plan would include elements of both of these proposals. He contended that a selective clearing as postulated by Professor Walker was probably more desirable than a total clearing as proposed by the petitioners. He did admit that the Walker plan would unduly restrict a contractor's right of access and that this particular facet of the plan should be changed. Also, he stated that a dragline should be used to drag debris out of the ditch, a consideration that was specifically rejected by the Walker proposal.

The objectors also called a Mr. Willett Wandell whose testimony concerned the esthetic and erosion control value of the trees along the drainage ditch. He did testify that he believed the use of herbicides was not dangerous and that it was necessary to control the regrowth of brush once it was removed.

The objectors then attempted to call certain witnesses who would testify concerning the ornamental and recreational value of the trees in question. The testimony was objected to and an offer of proof was made over the objection. The trial court excluded the testimony.

On August 3, 1970, the trial court filed a memorandum opinion in which it ruled the proposed work was necessary and advisable, and essentially adopted the petitioners' proposals; but the petitioners' proposals were subject to the clear proviso that in the course of the operation they should attempt to preserve as many trees as possible that would not thwart the overall purpose of proper, adequate and efficient drainage. The objectors filed a post-trial motion on September 1, 1970. The motion was heard and denied. On November 16, 1970, the objectors filed a notice of appeal. This court granted the petitioners' motion to dismiss the appeal for want of a final appealable order.

On August 19, 1971, the petitioners filed a petition for approval of the additional assessment pursuant to the original order of August 27, 1970. The hearing on the petition was set for September 28, 1971, but the hearing was subsequently continued. On May 19, 1972, notice of the amended assessment roll was published and mailed to interested

parties stating that a hearing would be held on June 7, 1972. The objectors filed an interrogatory to the petitioners inquiring precisely what land was excluded from the assessment role as land occupied by the district by virtue of its right-of-way, and specifically the date and proceedings in which the district acquired or purported to acquire such right-of-way.

On December 6, 1972, a hearing was held concerning the extent of the district's right-of-way. The objectors argued that the drainage district had no rights in the purported right-of-way; moreover, that the district was limited to an easement that extended from berm to berm in the ditch. The district maintained it acquired the right-of-way upon its formation in 1908, and that the order establishing said right-of-way was affirmed in a 1935 order when the previous assessment for work on the ditch was ratified. The objections were overruled by the trial court and the jury trial on the assessment role was set.

On January 8, 1973, the jury trial commenced and a verdict was returned in favor of the petitioners. The trial court entered judgment on the verdict on January 11, 1973. The court issued a memorandum opinion on the written objections finding that the petitioners had acquired the right to the land adjoining the ditch by virtue of the 1935 order confirming the petition for additional assessments. On February 1, 1973, the objectors filed a notice of appeal from the August 3, 1970 judgment, ordering the levy of additional assessments, and appealed from the judgment entered on the verdict approving the assessment roles prepared pursuant to the order of August 3, 1970.

The objectors urge that the trial court rejected various proposals advanced by them concerning the preservation of the environment and conservation of resources in deciding which renovation plan would benefit the land most and cost the land the least. Furthermore, the trial court allegedly improperly excluded testimony of the witnesses Bundy and Sikora dealing with the ornamental and recreational value of the many trees that were along the drainage ditch. They contend that the trial court erroneously limited witness Goodell's testimony concerning certain potential recreational value of the Saline ditch itself.

The Illinois Drainage Code (Ill. Rev. Stat. 1969, ch. 42, par. 1—1 *et seq.*), at section 4—24, requires:

> "If, at the conclusion of the hearing, the court finds that it is not necessary or advisable to construct any of the proposed work or to make any of the proposed changes or to exercise any of the proposed powers or to levy any proposed assessment, or finds that the cost thereof to the lands and other property in the district will exceed the benefits thereto, then the court shall dismiss the

petition. If the court finds that it is necessary or advisable to do one or more of the things proposed and that the benefit resulting therefrom to the lands in the district exceed the cost to such lands, then the court shall also find (a) the things which should be done, (b) the method by which the things shall be done, (c) the probable cost thereof, (d) whether an assessment should be levied or increased, (e) the amount of any assessment or additional assessment or new or increased annual maintenance assessment to be levied, and (f) any other matters which the court deems pertinent, and shall order the things to be done and the levy of an assessment in accordance with its findings. * * *"

The court must first determine whether or not it is advisable to engage in the proposed work. In so doing, the court must balance certain interest to determine whether the cost to the land and other property in the district will exceed the benefits. This requires the court to take into consideration all viable alternatives presented to it at the hearing, and if necessary and feasible, incorporate these alternatives into a homogeneous renovation program. It is also clear that environmental factors are relevant and should be considered by the court in balancing the costs against benefits. The reality of serious environmental consequences resulting from the completion of proposed work to be done on a drainage ditch has always been a relevant factor and must be considered. Since the July 14, 1970, hearing on the "Petition to Levy Assessment", the General Assembly has clearly amplified that factor with an amendment to section 4-24, which states:

"* * * In determining whether the proposed action is necessary or advisable and in determining the cost thereof, the court shall consider environmental values and amenities and may receive testimony from persons especially qualified by reason of training or experience in biological sciences, community planning, natural resource development, conservation, landscape architecture and similar fields. * * *" ch. 42, sec. 4-24, as amended by P.A. 78-495. Ill. Rev. Stat. 1973.

Once the court determines that the work is advisable, then the court must find among other things (a) the things which should be done; and (b) the method by which the things shall be done. That is, the court should find what must be done and then determine with particularity and unambiguously the method of completing the things which shall be done.

The trial court in this case found that the proposed work was necessary and advisable. The record establishes that it did, in fact, balance

the various competing interests off against one another in making its determination and finding that the benefits accruing to the land outweighed the cost. The record also reveals that the trial court considered all the alternative plans submitted by the litigant, including the environmental and conservation ramifications that petitioners' plan might have had upon the district as contended by the objectors. Moreover, the trial court heard testimony concerning the recreational and aesthetic value of the trees that were growing adjacent to the drainage ditch.

However, the court's order did not completely comply with the requirements of section 4-24. It failed to clearly and unambiguously state the method by which the proposed work was to be accomplished. That portion of the order in question states:

> "4. That the trees, underbrush, debris, broken tile, aquatic growth, stumps and dead fall should be removed from the slopes of the bank of the stream and from the stream itself as well as from the spoil banks of the ditch within the district's right of way in accordance with the detailed plans on file and introduced into evidence dated February 1, 1970, but that the Commissioners should retain all trees possible which do not thwart the overall purposes of proper, adequate and efficient drainage."

The plan referred to in the court order consisted of a four-page summary of an evaluation of existing conditions, a synopsis concerning the need for the project, the recommendations for the project and estimated cost, as well as an evaluation of the benefits accruing to the drainage district as a whole. Mr. Wilson, the petitioners' engineer at the July 14, 1970, hearing, explained the essence of the plan as follows. The district should undertake the clearing of the ditch channel of all trees, brush, junk and other debris insofar as necessary to clear the spoil bank areas within the legal right-of-way of the ditch by cutting off and burning and otherwise disposing of the growth. Wilson went on to say that he recommended that all stumps and exposed roots, as well as certain grasses, be treated with the herbicide that would discourage the regrowth of this particular type of vegetation. Essentially, Mr. Wilson advocated a near-total defoliation of the spoil bank area of the drainage ditch.

Notwithstanding the import of the plan, the trial court specifically provided that the commissioners were to retain all trees possible which did not thwart the overall purpose of proper, adequate, and efficient drainage. This proviso is vague and, in the light of Mr. Wilson's testimony, contradicts the plan as proposed. The approved plan and the conservation of trees at least within the right-of-way (35 feet on each side of the ditch) are mutually exclusive. The court, by reason of the

quoted statutory provision, is required to determine that which is to be done and the method of doing it. Upon this record, the order must deal with this issue with a great deal more specificity.

■■ As to the court's ruling on the inadmissibility of the testimony concerning the dollar ornamental value and recreational value of the trees, we find that the ruling did not amount to prejudicial error. Ample testimony was offered and heard dealing with the recreational value of the trees as well as their aesthetic and environmental value. The court had before it sufficient testimony concerning matters it must consider in making a final determination.

■■■ The objectors argue that the drainage district engineer Ralph Williams made various estimates of the capacity of the Saline Creek which were not supported by the facts in the record, and thus could not be used by the trial court to support its ultimate findings. The rule is clear that one test of admissibility of the opinion of an expert witness is whether there is sufficient evidence in the record to act as a foundation for the expert's opinion. When such a foundation is lacking and the opinion of the expert amounts to speculation and conjecture, it therefore should be excluded. (*Abramson v. Levinson*, 112 Ill.App.2d 42, 250 N.E.2d 796.) The trial court's ruling in this case permitting Mr. Wilson to testify on the matters in question was not erroneous. There was ample data presented at the proceedings which would permit of the opinion testimony.

Finally the objectors argued that the trial court erroneously held that the title to easements and right-of-ways adjacent to the drainage ditch was vested in the petitioners. The objectors contend that there is no judgment of eminent domain of record nor an easement of right-of-way of record granting to the petitioners any rights in the land abutting the drainage ditch. Therefore the petitioners have no rights of entry onto the lands adjoining the drainage ditch.

This issue directly relates to an order rendered on February 20, 1935, confirming the petition for additional assessments filed by the Saline Branch Drainage District pursuant to the Illinois Drainage Code then in effect. (Smith-Hurd Rev. Stat. 1933, ch. 42, par. 1 *et seq.*) The trial court found that the 1935 order was issued by a court with jurisdiction over the subject matter—notwithstanding the fact that the court was sitting as a probate court. The order was entered in conformity with the relevant statute then in effect (Ill. Rev. Stat. 1933, ch. 42, par. 19) that required the impaneling of a jury and that notice be given to all interested parties. Also the order complied with section 39 of the Drainage Code Smith-Hurd Rev. Stat. 1933, chapter 42, par. 39, in which the

method for obtaining additional assessments is established. Section 39 provided in part:

> "* * * The damages assessed under this Act in favor of any tract or tracts of land in such district, shall be in full compensation to the owner thereof, their heirs or assigns, *for the perpetual right-of-way,* as located by the commissioners over such lands or any ditch or ditches, open or covered, levee or other work including the right of the commissioners, their employees or contractors with teams, tools or machinery to enter upon such lands, and construct such work, and if necessary, to repair or enlarge the same; * * *." (Emphasis supplied.)

The trial court found the court required that damages were to be paid to those persons giving right-of-ways to the district. Finally, the trial court found that the extent of the right-of-way granted in 1935 was limited to the specifications as set forth in the 1935 petition.

The findings of a court that it has jurisdiction and that the statute has been complied with is not conclusive if the record establishes the court did not have jurisdiction over the subject matter in a drainage case; therefore, its attempted judgment or order is accordingly void. *In re Petition to Annex Certain Unincorporated Territory,* 65 Ill.App.2d 152, 212 N.E.2d 507.

■■ The record in this case, including the test of the 1935 order, reveals that the court that issued said order had jurisdiction over the subject matter. Likewise, proper notice was given to the interested parties, and damages—including those incurred as a result of taking certain right-of-ways—were assessed and paid as required by statutes then in effect. Accordingly, we find that the trial court's findings and interpretations of the rather confusing statutory scheme in question was not erroneous. It is clear that the objectors' predecessors in interest were given notice of the 1935 hearing and had ample opportunity to lodge their objections. Moreover these individuals were paid just compensation for the right-of-ways taken by the district. In short, these facts bar the objectors' collateral attack of the 1935 order.

Accordingly, the order of the circuit court of Champaign County providing for the levying of additional assessments is vacated and this cause is remanded to that court for further proceedings consistent with the views herein expressed. The judgment approving the assessment roles is affirmed.

Affirmed in part, vacated in part, and remanded with directions.

SIMKINS, J., concurs.

Mr. JUSTICE TRAPP, dissenting:

The orders of the trial court should be affirmed without remand.

The hearings to determine the work to be done and the method of doing such work were concluded in the court's ruling made in August, 1970. The amended assessment roll was filed in 1972. As objections to such assessment roll, the objectors sought to renew their objections to the work to be done as in the matters previously heard and, in addition, to challenge the fact of a right-of-way for maintenance purposes held by the district.

Upon a hearing of objections to the assessment roll, the two issues presented are: (1) Was the property of a particular owner assessed more than it was benefited, and (2) was the property of a particular owner assessed more than its proportionate share of the cost of the entire improvement. (*Commissioner of Drainage District No. 1 v. Goembel,* 383 Ill. 323, 50 N.E.2d 444; *Lewis Drainage District v. Melville,* 388 Ill. 526, 58 N.E.2d 580.) This record does not disclose any evidence whatever introduced upon such issues by the objectors. Ill. Rev. Stat. 1971, ch. 42, pars. 5—10 and 5—7, provide that the assessment roll shall be prima facie evidence on all issues as to the amount of benefits, damages and compensation. Upon the admission of the assessment roll into evidence, the burden shifted to the objectors to offer evidence as to the benefits and assessments of their respective parcels of land. *In re Petition of Commissioners v. Dennis,* 58 Ill.App.2d 466, 207 N.E.2d 313.

The evidence of record supports the conclusion of the court made in 1970 that the restoration of the drainage facility to its condition of almost 40 years ago was necessary, and that the scope and method of the plans proposed were in accord with accepted engineering practice and procedure. An engineer, testifying in behalf of the objectors, stated that certain proposals by objectors for the manner of doing the work would not be readily bid, and that the other proposals did not adequately permit the repair and restoration of field tile and drains in the rural portion of the district.

The objectors introduced no evidence tending to describe how their respective parcels of land would be adversely affected by the proposed method of work. It cannot be ascertained from the record whether or not their respective parcels have trees to be removed from the right-of-way. The record does show that the drainage authorities have met with landowners concerning specific problems in the method of doing the work related to specific parcels of land, and have stated that such would be done with other landowners.

The effect of much of the testimony offered in behalf of objectors would be to take from the district or diminish the beneficial use of the

easement for purposes of repair and maintenance heretofore acquired under the statutory authority existing at the time of the organization of the district, and now found in Ill. Rev. Stat. 1969, ch. 42, par. 4—17.

The statute provides that:

> "The petition shall contain the following  *  *  *: (a) a general description of any work or changes proposed to be undertaken  *  *  *." (Ill. Rev. Stat. 1969, ch. 42, par. 4—19.)

Similarly, in par. 4—24, the statute provides that the order of the court found:

> "(b) the method by which the things shall be done,  *  *  *."

The effect of the remanding order is to require the trial court to hold hearings and make findings described in detail for the removal of debris from the stream and the clearing of the right-of-way upon each parcel of land on both sides of the 13-mile channel of the drainage facility. It is clear that the statute does not contemplate or provide for such an order as is here entered.