The First National Bank and Trust Company of Barrington *et al.*, Plaintiffs-Appellees, *v.* Jack T. Maas *et al.*, Defendants-Appellants.

(No. 60387;

First District (5th Division)—February 14, 1975.

*Supplemental opinion filed upon denial of rehearing April 11, 1975.*

Stephen P. Carponelli and Samuel E. Hirsch, both of Chicago, for appellants, Thomas Evans and Rita Evans.

Spindell, Kemp & Kimmons, of Chicago (Paul C. Kimball, Jr., of counsel), for appellees.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

This appeal arises from a suit brought by the First National Bank and Trust Company of Barrington, as trustee, on behalf of the individual trust beneficiaries (hereafter collectively referred to as the Bank) to confirm a forfeiture provision in an installment agreement for trustee's deed and to retain the payments made thereunder. The suit sought further to regain possession of the premises by forcible entry and detainer and to remove all clouds on the title. The court issued a final decree of forfeiture finding the Bank entitled to all the relief prayed against all of the defendants. Two of the defendants, Thomas Evans and Rita Evans, appeal challenging (1) the validity of a provision in the agreement for the forfeiture of payments made; (2) the absence of a necessary party; (3) the validity of a real estate contract entered into by both of them but signed only by Thomas Evans; and (4) the sufficiency of the evidence.

On April 1, 1970, the Bank, as trustee, entered into an installment agreement for trustee's deed with defendants Jack Maas and D'Arcy Maas, his wife (the Maases), for the sale of certain real estate located in Barrington, Illinois, for $85,000. The schedule of payments envisioned a flat monthly payment of approximately $650 for principal, interest and taxes and certain lump sum payments, seriatim, through June 15, 1976. Thus, in addition to the $650 monthly payments, $8,000 was due on June 16, 1970; $2,000 on or before November 16, 1970; $12,921 on or before June 15, 1972, and a balance of $50,580 on June 15, 1976:

Paragraph 23 of the agreement provided that the time of payment was of the essence of the contract and that all provisions of the agreement were to be binding upon the assigns of the parties. Upon default by the Maases of any of the agreed payments, the agreement provided. in paragraph 3.10 that the plaintiffs could forfeit and determine the contract as follows:

> "3.10. In case of the failure of Purchaser to make any of the payments, or any part thereof, or perform any of the Purchaser's covenants hereunder, this Agreement shall, at the option of Bene-ficiary-Seller be forfeited and determined, and Purchaser shall forfeit all payments made on this Agreement, and such payments shall be retained by Beneficiary-Seller in full satisfaction and as liquidated damages by Beneficiary-Seller sustained, and in such event Beneficiary-Seller shall have the right to re-enter and take possession of the premises aforesaid."

By May 2, 1972, the Maases had failed to make the agreed monthly installment payments due in January, February, March and April of 1972. Notice of intention to forfeit and a demand for immediate possession were served on the Maases on May 8, 1972. No further action had been taken when, on May 30, 1972, the Maases entered into a real estate sales contract with defendants Thomas Evans and Rita Evans, whereby the Evanses contracted to purchase for $90,000 the same property the Maases had purchased from the Bank. This contract, and the rider attached, provided that the Maases were to sell their rights and interests under the installment agreement for trustee's deed. The contract also provided that the Evanses were to pay $20,000 as initial earnest money—$500 which they paid at the execution of the contract on May 30, 1972, and the balance of $19,500 was to be paid within 20 days thereafter. The Bank had consented to this agreement,[1] and the Evanses took possession of the premises on July 1, 1972. They had agreed in the contract to pay $650 per month until the July 1, 1973, closing, at which time they were to pay the balance of the purchase price of approximately $70,000. The contract also provided in paragraph 7 that if the Evanses defaulted, the earnest money would be forfeited. Similarly, paragraph 6 of the rider provided that if the Evanses failed to close on July 1, 1973, all funds paid would be forfeited.

The $19,500 balance was not paid by June 20, 1972, and on August 7, 1972, the Evanses and the Maases entered into an agreement with the Bank supplementing both the real estate sales contract between the

---

[1] Paragraph 3.5 of the original agreement prohibited any assignment or transfer without the consent of the Bank.

Evanses and the Maases and the prior installment agreement for trustee's deed. Pursuant to this tripartite supplemental agreement, an escrowee was to receive and hold the earnest money which would be due on August 10, 1972, and the full closing purchase price when paid by the Evanses on July 1, 1973, subject to certain instructions of the beneficiary-sellers to distribute in satisfaction of the installment agreement for trustee's deed.

In the supplemental agreement, all the parties adopted and agreed to all the terms and provisions of the installment agreement for trustee's deed and agreed that its provisions would be binding upon each of them except as modified in the supplemental agreement which, among other things, provided that the Evanses were to commence the $650 monthly payments to the Barrington Realty Company on August 15, 1972, and on the 15th day of each month thereafter until the July 1, 1973, closing, when the balance would be due. The Evanses were to pay $19,500 on August 10, 1972, which was to have satisfied the Maases delinquent installments due for January, February, March, April, May and June of 1972 and the delinquent principal payment of $12,921 due June 15, 1972. The Evanses paid $650 on August 15, 1972, but they failed to pay the $19,500 balance when it became due on August 10, 1972, as provided in the supplemental tripartite agreement.

They still had not paid this $19,500 balance on or about September 15, 1972, when the Bank delivered to the Evanses and the Maases notice of intention to forfeit, with a demand for immediate possession. A declaration of forfeiture was served on the Evanses and the Maases in November of 1972, and filed in the office of the recorder of deeds of Cook County, Illinois, on November 2, 1972. This was in accordance with the provisions of the installment agreement for trustee's deed. On November 9, 1972, the Bank brought this suit against the Maases and the Evanses, asking for a judgment (1) finding they were in default of their obligations to the Bank; (2) giving it possession of the premises; (3) granting it clear title; (4) allowing it to retain all payments received as liquidated damages pursuant to the terms of the agreements; and (5) granting it such other relief as deemed appropriate.

On January 12, 1973, the court ordered the Evanses to pay the deficient monthly installments due in September, October, November and December, 1972 and January, 1973, pursuant to the terms of paragraph 1 of the installment agreement for trustee's deed as readopted in the supplemental Maas-Evans-Bank agreement of August 7, 1972. The Evanses were also ordered to make payments on the 15th of every month thereafter until the contracted closing date of July 1, 1973. That

order then continued the matter to April 4, 1973, for a hearing on the failure of the Evanses to pay the $19,500 balance due on the $20,000 earnest money as provided by the real estate sales contract and the supplemental agreement. The matter was thereafter postponed on numerous occasions until trial was finally set for October 10, 1973.

Meanwhile, on July 1, 1973, the date contracted by the Evanses for closing and payment of the balance of the purchase price pursuant to their real estate sales contract with the Maases and the supplemental agreement, the Evanses had paid nothing towards the payment of the full purchase price and failed to make the closing payment due on that date.

Finally, during hearings on October 10, and October 11, 1973, the Evanses represented to the court that sufficient financing would be obtained to satisfy all their obligations to the Bank under the various agreements. Subsequently, the court was informed that full financing had been obtained and the parties tendered a stipulation to dismiss the suit, subject to the satisfaction of the settlement agreement and payment to the Bank of the entire balance of the purchase price plus interest and delinquent taxes. On October 15, 1973, an order of dismissal was entered thereon.

Thereafter, the Evanses failed to satisfy the conditions of the settlement as set forth in the stipulation to dismiss and the order entered thereon, and the Bank petitioned the court to vacate the dismissal order and to set a trial date for final disposition of all matters. A trial of all matters was then held on January 8, 1974, when a judgment was entered granting the Bank the relief prayed for in its petition, and the matter was continued to January 16, 1974, for the entry of a final decree of forfeiture. The Evanses, after the judgment was entered, were again granted additional time by the Bank but failed to raise sufficient funds to cure the defaults. On January 16, 1974, the attorneys for the Bank submitted their supplemental petition, plus supporting affidavit, for allowance of attorney fees and expenses to be paid by the Evanses and the Maases.

On January 17, 1974, the final decree of forfeiture was entered, effective as of January 16, 1974. The final decree ordered, adjudged and decreed that all of the defendants were in default; that they forfeit their possession and surrender the premises; that clear title be restored to the Bank; and that it retain any and all payments made and recover costs of $3,000 from the Maases and $3,000 from the Evanses. No appeal has been taken by the Maases.

738

I.

■■ Defendants first challenge the validity of the forfeiture provision of the installment contract for trustee's deed, which provides for forfeiture of all payments made upon breach of the Agreement, arguing that such provisions are against public policy. This challenge was not brought before the trial court and ordinarily would not be considered when raised for the first time on appeal. *Hartman v. Hartman*, 11 Ill. App.3d 524, 297 N.E.2d 199.

The problem is compounded by the failure of the record to include a transcript of the proceedings had before the trial court. Thus, we have only the bare contractual agreements upon which to determine the validity of the challenged provision. Nevertheless, in view of the circumstances here, we will consider this contention.

The central provision in controversy involves paragraph 3.10 of the installment agreement for trustee's deed which became binding upon the Evanses through its incorporation into both the real estate contract of May 30, 1972, and the tripartite agreement of August 7, 1972. That paragraph provides that upon default of any payment "[t]he Purchaser shall forfeit all payments made on this Agreement, and such payments shall be retained by [the Bank] in full satisfaction and as liquidated damages."

Although the issue was not raised by the parties, we find it first necessary to determine whether the forfeiture provision may properly be classified as either a penalty or liquidated damages. The Bank contends the agreement properly states a liquidated damage provision, while the Evanses contend the forfeiture constitutes a penalty.

As a general rule, damages are liquidated where they can be determined from the contract itself or from the contract and rules of law applicable thereto, but where it is necessary to introduce evidence before a party can prove his case, the damages are unliquidated. (*Lepman & Heggie v. Inter-State Produce Co.*, 205 Ill.App. 270, 15 I.L.P. *Damages* § 111, n. 4 (1968).) We note here that the contract does not envision a forfeiture of all amounts due on the date of breach, but rather a forfeiture of all amounts paid up to that time. Thus, the contract itself sets or states no fixed sum as liquidated damages. As stated in 25 C.J.S. *Damages* § 101 (1966):

"It has been held that to be valid, a provision for liquidated damages must be for a certain sum, and not be such as will call for future action by the court to determine the amount thereof. Thus a provision that a party may retain as liquidated damages all sums

received from the other cannot be upheld as a provision for liquidated damages since the sum is not fixed and certain." (Footnotes omitted.)

However, an exception is made in installment contracts for the sale of land. Thus, § 113(4) states:

"A provision for the forfeiture of installment payments made on a contract to purchase land has been upheld where the installment payments were approximately equal to the rental value of the premises, but has been held penal where the installment payments substantially exceeded the rental value." (Footnotes omitted.)

■■ We do not believe that the amount forfeited here is punitive or excessive. Nor do the installments substantially exceed the fair rental value of the property. The Evanses paid only $500 of their $20,000 earnest money and $7,150 in 11 monthly installments of $650 each while occupying the premises for some 18 months prior to the date of trial. There is no contention that the amount forfeited here, $7,650, was not a fair rental of the $90,000 property.

## II.

Defendants next urge that the real party in interest, the title holder, Palatine National Bank, should have been a party to the suit and was a necessary party.

Our examination of the partial record presented discloses no indication that title to the property during the periods in question lay in any party other than the First National Bank and Trust Company of Barrington. Defendants call our attention to Exhibit B to plaintiff's petition to vacate the dismissal order, which purports to be a Chicago title insurance policy showing that on its effective date, October 15, 1973, fee simple ownership was in the Palatine National Bank. Plaintiffs explain that this resulted from an attempted settlement proposed by defendants in an effort to acquire financing. An escrow account was created and title was to be held in the Palatine National Bank and to pass contingent upon the closing and payment to the First National Bank and Trust Company of Barrington. The contingency agreement never reached fruition, and thus, no interest ever vested in the Palatine National Bank.

In any event, we need not consider this argument since defendants' claim was not presented and ruled on by the trial court. The rule as expressed in *Hux v. Raben*, 38 Ill.2d 223, 225, 230 N.E.2d 831, 832, states, "[A]n appellate court should not * * * consider different theories or new questions, if proof might have been offered to refute or overcome them had they been presented at the trial."

## III.

■■ Defendants next contend that the real estate sales contract between the Maases and the Evanses is invalid, because it was not signed by both the defendants or the Palatine National Bank. Thus, they argue that it cannot bind them to the forfeiture provisions in the original agreement. We note, however, that the supplemental tripartite agreement of August 7, 1972, which adopted the provisions of the original agreement, lists Thomas Evans and Rita Evans as buyers and is signed by both of them. Consequently, the provisions of installment agreement for trustee's deed, including the forfeiture provisions therein, are binding on them.

## IV.

■■ Defendants also assert that there were issues of fact upon which evidence should have been taken by the trial court prior to its ruling. In this regard, we note that defendants have not brought to this court any transcript of proceedings or other statement of facts which reveal the proceedings of the trial. Furthermore, the record available to us does not disclose that defendant was ever precluded from introducing additional evidence or from making an offer of proof. It is indicated from the statements of facts in the briefs that the trial court gave detailed consideration to the provisions of the various agreements and that the evidence presented was sufficient to support its judgment. In view thereof, and without a transcript of proceedings at trial to determine what issues were presented or omitted by defendants, this court cannot now review the conduct or the considerations of the trial court. (*Libman v. Gipson,* 93 Ill.App.2d 62, 235 N.E.2d 670; *Perez v. Janota,* 107 Ill. App.2d 90, 246 N.E.2d 42.) As stated in *Libman,* at page 64, "The burden is on the party who brings a cause to a reviewing court to present a record which fairly and fully presents all matters necessary and material for a decision of the questions raised * * *."

For the reasons stated, the judgment is affirmed.

Affirmed.

DRUCKER and LORENZ, JJ., concur.

### SUPPLEMENTAL OPINION

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

In our opinion, we stated "A trial of all matters was then held on January 8, 1974," and we thereafter mentioned that the record did not include a transcript of the proceedings on that date. In their petition for rehearing, defendants Thomas Evans and Rita Evans, apparently in the belief that a lack of a transcript was a controlling aspect of our opinion,

make the point that no evidence was taken at that hearing, so that "no transcript of proceedings was required or necessary." In this regard, we note that the order of the trial court entered on January 8, 1974, contained the following: "* * * [T]he court being fully advised in the premises, and the trial of said case having been heard * * *." Furthermore, in plaintiff's statement of facts, they state that "On January 8, 1974, a full trial was had on all issues and presented to the Court * * *."

Thus, it would appear that a trial of some kind did take place on January 8, 1974, in which event a transcript of whatever occurred on that date would have been helpful to this court, as we stated in our opinion. In any event, our reference to the transcript was intended only to reflect our belief that its availability would have cast greater enlightenment on the basic problem. In no way was the failure of the transcript controlling of our conclusions.

These defendants also assert in their petition that this court "has assumed what the reasonable rental value of the property was without any evidence, and the court therefore assumed, without any evidence, that the lower court had a right to order the forfeiture." As we understand this contention, defendants argue that since we found the liquidated damage clause to be invalid and stated that the question then to be determined was whether the amount forfeited exceeded the fair rental value, we should not have resolved the question here. They apparently believe that we should have remanded the question for a hearing.

We disagree. Here, defendants contracted to purchase the property in question for $90,000. They were to pay $20,000 in earnest money, of which only $500 was paid, and in addition they paid an additional amount of $7,150 in 11 monthly installments of $650 each. Thus, the total amount forfeited was $7,650, which amount averages out to a payment of $425 a month for the 18 months of their occupancy. It remains our opinion that it was not necessary to remand the question of whether the $425 per month exceeds the fair rental value of property having a value of $90,000. We think it stands without question that it does not, particularly in view of the fact that the parties had agreed to payments of $650 per month. In these circumstances, we would be remiss in our judicial obligations were we to remand for this sole purpose.

The other questions raised in the petition for rehearing are restatements of points raised in defendants' brief, which were considered in our opinion, and we find no reason to alter our conclusions concerning them.

For the reasons stated, the petition for rehearing is denied.

DRUCKER and LORENZ, JJ., concur.