ROSEMARY HAMMING, Plaintiff and Counterdefendant-Appellant, *v.* THOMAS MURPHY *et al.*, Defendants and Counterplaintiffs-Appellees.

Second District   No. 79-286

Opinion filed May 6, 1980.

Bernard N. Winter and W. P. Anderson, both of Fuqua, Winter & Associates, Ltd., of Waukegan, for appellant.

Thomas P. Stepanich, of Waukegan, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

Plaintiff, Rosemary Hamming, appeals from a judgment which denied rescission of a real estate purchase contract with the defendants, Thomas Murphy and Margaret Murphy, and found in favor of defendants

on their counterclaim for possession of the property and liquidated damages.

This action arose out of the purchase by plaintiff from defendants of certain lakefront property located in Wauconda, Illinois. It was improved by a four-unit apartment building, a second building containing two efficiency apartments, docks, boat house, beach, and a fast-food restaurant known as "Snappy Snacks." In accordance with the terms of their preliminary option agreement, plaintiff took possession of the property on May 12, 1976, and was by its terms permitted to operate the restaurant facility until either June 15, 1976, or until the earlier execution of the purchase contract if she decided to exercise the option. During this period of time plaintiff discovered a number of defects in the condition of the property and its equipment, and defendant then deposited $3,000 under an escrow agreement to be applied to necessary repairs. On June 8, 1976, the parties entered into the installment contract which is the subject of this action and, in accordance with its terms, plaintiff paid $30,000 as earnest money against the total purchase price of $185,000, the balance of which was to be paid in installments amortized over a 25-year period. Thereafter, however, plaintiff failed to make the additional $10,000 earnest payment or any of the installment payments required by the contract. On November 12, 1976, defendant sent to her a letter in which he declared the contract forfeited demanding possession within 30 days. This action by plaintiff seeking to rescind the contract followed.

As a basis for its rescission, plaintiff alleged she had been induced to enter into the agreement with defendant by misrepresentations made by him and his real estate agent as to the permitted uses under the existing zoning of the property, its condition, and the profitability of the restaurant portion of it. Both plaintiff and her daughter, Carol Pizzitero, testified in trial that during negotiations for the purchase of the property Mrs. Murphy had represented (1) that the premises and its appliances, particularly the snack shop equipment, were in good working order; (2) that all zoning "red tape" had been taken care of so as to permit construction of apartments over the boathouse structure; (3) that a heater could be installed in the boathouse; and (4) that the snack shop, a seasonal business, had grossed $40,000 during the previous summer resulting in the receipt of $4,000 in rent by defendants under the 10-percent rental agreement held with the prior lessee of the restaurant. Plaintiff further testified that when she had requested defendant to show her the business records of the restaurant defendant informed her that the former lessee would not produce his account books as he feared a rent increase. That party, however, when called to testify in trial, stated that his actual receipts for the previous summer season had required him to pay a rental of only $1,470.60 to defendant, suggesting an income of $14,706. When

called as adverse witnesses, defendants denied making any of the representations attributed to them, including the statements as to the profitability of the restaurant.

The record also discloses that plaintiff had 16 years of business experience, had previously managed a similar fast-food restaurant, and, under the preliminary possession agreement between the parties, had operated this restaurant over the Memorial Day holiday.

At the close of plaintiff's case the trial court, sitting without a jury, entered judgment for defendant on plaintiff's complaint for rescission of the contract and, after considering further evidence, entered judgment for defendants on their counterclaim, awarding them $30,000 in liquidated damages as provided by the contract. The court found that the plaintiff could not reasonably rely on any representation made by defendants concerning either the existing zoning laws or their application to the property. It also found that plaintiff was well aware, according to her own testimony, that there were certain defects in the premises and equipment before entering into the contract and, in fact, that provisions had been made by the parties at that time for correction of those deficiencies. As to the remaining claim of misrepresentation of profitability, the court found that Mrs. Hamming did not rely upon any such representation. It concluded that she must have been aware of, or at least alerted to, the falsity of any statements made by defendant as, according to her testimony, almost everything said about the property was determined by her to be untrue before entering into the agreement. In addition, the court noted she was experienced in business matters, had the opportunity to operate this restaurant over one of the major holidays, and, therefore, would be aware of its income producing capabilities.

It is well established that the factual findings of a trial court sitting without a jury will not be disturbed on review unless against the manifest weight of the evidence. (*Pensgard v. Powers* (1972), 8 Ill. App. 3d 646, 290 N.E.2d 642.) The weight to be given to conflicting evidence and the credibility to be accorded the witnesses is within the province of the trial court. (*Pensgard v. Powers*; see *Banks v. Gregory* (1959), 16 Ill. 2d 227, 157 N.E.2d 12.) Such determinations will not be overturned on appeal when the record of a case is sufficient to support it. *Greene v. City of Chicago* (1977), 48 Ill. App. 3d 502, 363 N.E.2d 378, *aff'd* (1978), 73 Ill. 2d 100, 382 N.E.2d 1205.

■■ A misrepresentation, to be the basis of a charge of fraud, must contain the following elements: (1) it must be a statement of material fact, as opposed to opinion; (2) it must be untrue; (3) the party making the statement must know or believe it to be untrue; (4) the person to whom the statement is made must believe and rely on it, and have a right to do so; (5) it must have been made for the purpose of inducing the other party

to act; and (6) the reliance by the person to whom the statement is made must lead to his injury. (*Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 48, 390 N.E.2d 393, 403.) While the trial court did not specifically determine whether or not the representations attributed to defendant were made by him, it did conclude that, if made, plaintiff did not act in reliance thereon as to either the condition of the premises or the profitability of the business. In our view these findings are well supported by the evidence, and we will not disturb them.

It is not disputed that prior to entering into the contract plaintiff was aware that the basement needed repair; that the water heater did not function; that an exhaust fan failed to operate; that the ice machine leaked; and that the plumbing was worn and leaked. The parties had in fact entered into the escrow agreement we earlier described under which defendants provided $3,000 towards making needed repairs. As stated in *Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 141:

> "[T]he person asserting that he acted to his detriment in reliance upon a fraudulent misrepresentation must establish his right to rely thereon. He may not enter into a transaction closing his eyes to available information, and then charge that he has been deceived by the words or conduct of the other party."

In considering plaintiff's contention she relied upon a misrepresentation of the restaurant income, we note she was an experienced business woman, had previously managed a similar restaurant, and had an opportunity to operate this restaurant, albeit for a short time, before deciding to purchase it. Under the circumstances of this case, the evidence was sufficient to warrant the finding by the trial court that plaintiff was not induced to act in reliance on any representation of profitability made by defendant but made her decision to purchase the property based upon her knowledge of its operation and business experience. An analogous situation was presented in *Schmidt v. Landfield* (1960), 20 Ill. 2d 89, 94, 169 N.E.2d 229, 232, where the court held:

> "[A] party is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth of the representations he is chargeable with knowledge; and if he does not avail himself of the means of knowledge open to him he cannot be heard to say he was deceived by misrepresentations."

We do not suggest that an experienced business person may not justifiably rely on false statements of profitability made by one with superior knowledge of the facts as circumstances may well exist permitting such reliance. (*MacAuley v. Rickel* (1968), 96 Ill. App. 2d 283, 238 N.E.2d 603;

*Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 390 N.E.2d 393; see *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 402 N.E.2d 599.) In the circumstances of the present case, however, we cannot say that the trial court's finding on the matter of reliance was against the manifest weight of the evidence.

■■ Plaintiff further contends that the trial court erroneously found she could not reasonably rely on a statement that all zoning red tape had been taken care of so as to allow certain improvements she wished to make on the premises. Generally, one is not entitled to rely upon a representation of law as both parties are presumed to be equally capable of knowing and interpreting the law. (*Peterson v. Yacktman* (1960), 25 Ill. App. 2d 208, 166 N.E.2d 452; see *Kazwell v. Reynolds* (1928), 250 Ill. App. 174.) The existing zoning of the property and the procedures under which a zoning ordinance could be modified, or a variance or permit could be granted are a matter of public record available to both parties. We conclude plaintiff was charged with knowledge of the permitted uses of this property under applicable zoning ordinances and cannot base her action for rescission on any contrary representations made by defendant.

■■■ Plaintiff also contends that the trial court erred in refusing to permit her to testify to the gross earnings of the snack shop while it was operated by her. Objections to that testimony were sustained by the trial court as not being relevant to any factual issue in the case upon the court's conclusion that any representations of profitability made by defendant were mere puffing. Generally, evidence directed towards proof of the falsity of a representation is relevant to the issue of fraud. (*MacAuley v. Rickel* (1968), 96 Ill. App. 2d 283, 238 N.E.2d 603.) Moreover, in the case before us, evidence of plaintiff's income during the period she operated the restaurant before entering into the contract to purchase it would be probative of the issue of whether she relied upon any statements of expected income made by defendant. Also, evidence of the income of the restaurant operation subsequent to entering into the contract would tend to establish the truth or falsity of any profitability statements made by the defendant. As plaintiff failed to make an offer of proof of the substance of the excluded evidence, however, we will not consider this claim of error. (*In re Estate of Minsky* (1977), 46 Ill. App. 3d 394, 360 N.E.2d 1317.) Nevertheless, whatever the amount of actual income received by Mrs. Hamming prior to entering into the contract, she was not dissuaded from purchasing the restaurant. Thus, she apparently relied upon her previous business experience and her first-hand knowledge of this restaurant operation in making her decision. In these circumstances the erroneous exclusion of this testimony does not require reversal since its admission would not, in any event, have been determinative of the issue of reliance in this case. (See *Nitrin, Inc. v. Bethlehem Steel Corp.* (1976), 35 Ill. App. 3d

577, 589, 342 N.E.2d 65, 74; *Fopay v. Noveroske* (1975), 31 Ill. App. 3d 182, 334 N.E.2d 79.) Nor did the exclusion of this evidence prevent plaintiff from establishing the falsity of the purported statement of profitability, as the former lessee testified to his actual rental payments and income for the previous year. The trial court thus had ample evidence before it, other than the excluded testimony, from which to conclude that the statement, if made, was false. *In re Petition to Levy Assessments* (1974), 19 Ill. App. 3d 125, 310 N.E.2d 454.

We turn then to defendants' counterclaim and consider plaintiff's contention that the award thereunder of $30,000 as liquidated damages to defendants was punitive and must be set aside. These damages were fixed pursuant to the terms of a forfeiture clause contained in the contract which provided, in pertinent part, that:

> "In case of the failure of Purchaser to make any payments, or part thereof, * * *, Purchaser shall forfeit all payments made on this Agreement, and such payments shall be retained by Seller in full satisfaction as liquidated damages."

■■ ■ Generally, a forfeiture provision in a contract will be upheld as a liquidated damage clause where the amount to be forfeited is specified, bears some reasonable relationship to the actual damages sutained, and it is apparent the damages would have been difficult to ascertain at the time of contracting. (*Hayden v. Keepper-Nagel, Inc.* (1978), 62 Ill. App. 3d 828, 379 N.E.2d 116.) Where the contract does not specify a fixed sum or is not capable of a determination of the amount of damages without extrinsic evidence, they are considered to be unliquidated and the forfeiture clause will not be enforced. (*First National Bank & Trust Co. v. Maas* (1975), 26 Ill. App. 3d 733, 327 N.E.2d 205.) As stated in 25 C.J.S. *Damages* §101a (1966):

> "It has been held that to be valid, a provision for liquidated damages must be for a certain sum, and not be such as will call for future action by the court to determine the amount thereof. Thus a provision that a party may retain as liquidated damages all sums received from the other cannot be upheld as a provision for liquidated damages since the sum is not fixed and certain."

An exception exists, however, in the case of an installment contract for the purchase of land. A forfeiture provision contained within such a contract will be upheld as liquidated damages where the payments to be made are approximately equal to the fair rental value of the premises for the period in question, but is considered penal and invalid where substantially in excess of that standard. *First National Bank & Trust Co. v. Maas*; 25 C.J.S. *Damages* §113(4) (1966).

In the case at bar, if breached, the contract provided for the forfeiture of "* * * all payments made on [the] agreement * * *." A

similar provision was considered in *First National Bank & Trust Co. v. Maas* where the court found it could not be upheld as a liquidated damage provision as the sum to be forfeited was not fixed or ascertainable without the introduction of evidence. There, however, the reviewing court could determine, from the record before it, that the sum sought to be forfeited was less than the amount of a fair rental of the property in question and thus it was able to conclude that the forfeiture was not penal.

On the record before us we cannot make that determination. No evidence was submitted in the trial court relating to the fair rental value of the property for the approximate 12 months of plaintiff's possession. Whether the $30,000 paid to defendant under the contract towards the $185,000 purchase price was essentially equivalent to its rental value, and thus subject to forfeiture, or to substantially exceed its rental value and be considered penal must be determined by the trial court on remand. If after hearing evidence the court finds under the standard we have discussed that the amount forfeited does not exceed the fair rental value of the property for the period it was held by plaintiff, it will find the liquidated damage clause of the contract to be valid. If, on the other hand, the $30,000 payments are determined to substantially exceed a fair rental value and to be penal then the trial court will hear further evidence and determine defendant's actual damages. See, *e.g.*, 15 Ill. L. & Prac. *Damages* §§33, 118 (1968); *Hayden v. Keepper-Nagel, Inc.* (1978), 62 Ill. App. 3d 828, 379 N.E.2d 116.

Plaintiff's final contention is that the trial court erred in finding she had abandoned the contract to purchase the real estate and in permitting defendants to retain possession of the property.

After plaintiff failed to complete the earnest payment and to make the installment payments when due under the contract, the defendants served notice on November 22, 1976, that they considered the contract to be forfeited and demanded payment of all sums then due of $9,273.29 or possession of the premises within 30 days. Defendants alleged in their counterclaim the notice was properly served on plaintiff and, in her answer to their counterclaim, she admitted the notice, denied the sums claimed were due and, in addition, denied that she continued to hold possession of the property as contract purchaser or otherwise. Thereafter, on May 24, 1977, the trial court entered an order permitting defendants to take possession of the property without prejudice to the rights of the parties as to an accounting of income received and expenses incurred, and other matters which might arise during the litigation.

Plaintiff now contends, however, that in seeking to forfeit the contract defendants failed to comply with either its forfeiture terms or the provisions of the Forcible Entry and Detainer Act (Ill. Rev. Stat. 1975, ch.

57, par. 1 *et seq.*) and are entitled to neither forfeiture nor possession of the property. This argument is clearly inconsistent with plaintiff's answer to the counterclaim, which we have previously described, where she stated she did not hold possession of the property as a contract purchaser or on any other basis. It is apparent that both parties to this action considered defendants' notice of forfeiture to be adequate (see *Aden v. Alwardt* (1979), 76 Ill. App. 3d 54, 60, 394 N.E.2d 716, 720; *Morey v. Huston* (1967), 85 Ill. App. 2d 195, 228 N.E.2d 544), and that plaintiff thereafter abandoned the contract to purchase the property. Plaintiff's present claim of a right to possession and assertion that the contract continues in force are not supported by the record. Neither has plaintiff tendered any of the sums due defendant on the contract at the time she commenced her action for rescission or any further sums which have subsequently accrued thereunder. We conclude that the finding of the trial court plaintiff abandoned the contract is well supported by the evidence and will not disturb it. *Stuckrath v. Briggs & Turivas* (1928), 329 Ill. 555, 566-67, 161 N.E. 91, 95-96; *Herrington v. Hubbard* (1839), 2 Ill. 569; *Hooven v. Woodiel* (1975), 27 Ill. App. 3d 467, 327 N.E.2d 276; *666 North Orleans, Inc. v. Kors* (1973), 11 Ill. App. 3d 676, 297 N.E.2d 372.

For these reasons the judgment of the trial court as to plaintiff's complaint will be affirmed. As to defendant's counterclaim the judgment will be affirmed insofar as it relates to plaintiff's abandonment of the contract and defendant's right to possession of the property; it will be remanded, however, for the accounting reserved in the trial court's order of May 24, 1977. The award of liquidated damages made under the counterclaim will be reversed and that matter remanded for further consideration in accordance with this opinion.

Affirmed in part; reversed and remanded in part.

SEIDENFELD, P. J., and LINDBERG, J., concur.