OMNI OVERSEAS FREIGHTING CO., INC., Plaintiff-Appellee, *v.* CARDELL INSURANCE AGENCY *et al.*, Defendants-Appellants.

First District (4th Division) No. 78-1046

Opinion filed November 1, 1979.

640

Jack L. Parrino and Patrick A. Barton, both of Chicago, for appellants.

Bradley, McMurray, Black & Snyder, of Chicago (Robert C. Stephens, of counsel), for appellee.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Omni Overseas Freighting Co., Inc., (Omni) filed an action against the defendants, Cardell Insurance Agency (Cardell) and Carmen Raguso, alleging failure to procure liability insurance in accordance with the plaintiff's instructions. The defendants appeal from a judgment in the plaintiff's favor which was entered following a trial without a jury in the circuit court of Cook County. On appeal, the defendants argue the trial court erred (1) in finding that Omni proved a breach of an agreement with Cardell and Raguso to procure insurance coverage; (2) in holding that Omni was not obliged to read its policy and is not bound by its terms; (3) in finding that Omni had met its obligation to tender the defense of claims against it to defendants; and (4) in admitting into evidence the unpaid invoices of Omni's attorneys without proof of the reasonableness of the charges.

The testimony given at trial revealed the following facts. Omni is engaged in the business of handling and distributing containerized cargo from the Orient. In August 1973, Clarence J. Calabria, president of the

plaintiff company, met with the defendant Raguso to discuss insurance coverage. Calabria testified that he told Raguso he wanted coverage which would protect him if his dock personnel damaged something during handling. Raguso testified that Calabria originally told him that he wanted comprehensive general liability, workmen's compensation and possibly group hospitalization insurance. The defendants' answer to the complaint admitted that the plaintiff hired them to obtain insurance coverage for the plaintiff for any liabilities which the plaintiff might incur for damage to cargo, belonging to others, while such cargo was in the plaintiff's custody.

Raguso told the Hartford Insurance Group (Hartford) what the plaintiff had told him concerning the desired coverage. When he got the policy from Hartford he mailed it to the plaintiff. On cross-examination Raguso said he did not remember if he delivered the Hartford policy to Omni. Calabria said he received an insurance policy from Hartford and was charged a premium for it. Calabria also testified that he never received a copy of the Hartford policy; that he only received a booklet. In June of 1974, Raguso told Calabria that the Hartford coverage consisted of marine insurance. The policy was subsequently cancelled, the premiums were returned, and Hartford refused to issue the type of policy requested by the plaintiff. Calabria testified that Raguso then told him he would procure the type of insurance requested by Omni.

The plaintiff introduced into evidence two Transamerica Insurance Company (Transamerica) policies which were procured by Raguso for the plaintiff following the discovery that the Hartford policy was for marine insurance. One was a "Mercantile Open Stock Burglary" policy and the other was an "Inland Transit" policy. The plaintiff also introduced into evidence a letter dated October 27, 1975, from Transamerica to Raguso, indicating that the burglary policy did not cover a cargo damage loss. Also introduced was a "return premium notice," dated August 27, 1974, from Transamerica to Raguso, covering the inland transit policy. The notice showed that the cancellation method was "flat," and contained a handwritten note saying "cargo policy issued in error." The policy was cancelled effective July 17, 1974, the date of issuance, according to the notice.

Calabria testified that he had never seen the return premium notice. He also said he did not know if he had a receipt for the payment of the premium on the inland transit policy. He did not read that policy when he received it. He does not know if he was billed for it; he paid every invoice that Raguso sent him.

Raguso testified that the plaintiff never paid the premium on the inland transit policy. However, on cross-examination he admitted it was possible that he never billed the plaintiff for it. At his deposition Raguso said he had paid Transamerica the premium on the inland transit policy.

The plaintiff also introduced into evidence a "cancellation receipt for

all cancellations including lost policies" showing receipt of the cancellation of the inland transit policy and signed by "Bud Calabria" with Raguso as witness. Calabria testified he never saw the document until it was received from Transamerica during the course of the litigation and that it was not his signature on the document. He testified that his nickname is "Bud." He also testified that he never authorized the cancellation of the inland transit policy and that he was never notified that the policy had been cancelled.

Raguso identified his own signature on the inland transit cancellation notice. He said he did not recognize the other signature. Raguso admitted receiving the notice of cancellation from Transamerica and said he did not send the notice to Omni. On redirect, Raguso testified that he is familiar with insurance company practices and that the usual procedure of such companies is to send notice of termination to both the insured and the broker.

Following closing arguments the court entered judgment for the plaintiff and against the defendants in the amount of $9,613.43 plus costs.

The defendants argue the plaintiff failed to carry its burden of proving the defendants had breached an agreement to procure insurance coverage. The defendants state they did in fact procure the Transamerica inland transit policy, which did provide the desired coverage, and that, according to Raguso's testimony, the policy was never paid for. The plaintiff takes issue with defendants' assertion that the inland transit policy provided the proper coverage. The defendants argue they acted in good faith and with reasonable care, skill and diligence to place the insurance in compliance with the plaintiff's directions, and are thus not liable for any damages.

In *Pittway Corp. v. American Motorists Insurance Co.* (1977), 56 Ill. App. 3d 338, 370 N.E.2d 1271, this court wrote:

> "As a general rule an insurance broker is bound to exercise reasonable skill and diligence in the transaction of the business entrusted to him and will be responsible to his principal for any loss resulting from his failure so to do. [Citation.] * * * [W]e observe that the primary function of an insurance broker as it relates to an insured is to faithfully negotiate and procure an insurance policy according to the wishes and requirements of his client. [Citations.] * * *
>
> The law places a particular burden on an insurance broker to exercise competence and skill when he renders the service of procuring insurance coverage." 56 Ill. App. 3d 338, 346-47, 370 N.E.2d 1271, 1277.

This court has also noted that an insurance broker who fails to procure insurance when obligated to do so, or who causes damage to his principal whether by omission or commission, is liable for any loss the

principal may sustain. (*Pugh v. Bershad* (1971), 133 Ill. App. 2d 174, 272 N.E.2d 745.) The broker is not liable if he acts in good faith and with reasonable care, skill and diligence to place the insurance in compliance with his principal's instructions. (*Pugh.*) The resolution of these issues depends primarily on the credibility of the witnesses. *Pugh.*

 We conclude the evidence supported a finding that the defendants breached their agreement to provide a specific type of liability insurance for the plaintiff. The defendants' answer to the complaint admitted that the plaintiff hired the defendants to obtain insurance coverage for the plaintiff "for any liabilities which Omni might incur for damage to cargo, belonging to others, while such cargo was in Omni's care, custody and control, after delivery of such cargo to Omni at its warehouse in Berwyn, Illinois." Additionally, Calabria said he told Raguso at their initial meeting that he wanted "liability insurance for handling across the dock; that if [his] dock personnel would damage something in handling, [he] would want to be covered by insurance." Calabria also said Raguso understood what he was talking about.

The Hartford policy covering marine liabilities clearly did not meet the plaintiff's specifications, as they were communicated to Raguso. The defendants do not dispute this fact. The two Transamerica policies were issued in July 1974, almost a year after Raguso agreed to procure insurance for the plaintiff. The burglary policy was not commensurate with the plaintiff's request. The inland transit policy, which the defendants claim covers the requested risks while the plaintiff disputes this fact, was cancelled at some later date, effective the date of issuance. There is no evidence in the record to show why that policy was cancelled or by whom. Calabria testified that the signature on the termination notice was not his and that he never received notice of the cancellation. Raguso produced the cancellation notice from his records in response to an interrogatory.

Raguso breached his obligation to exercise competence and skill in his dealings with the plaintiff in failing to communicate the fact of the cancellation of the inland transit policy to the plaintiff while he knew or should have known that the plaintiff believed he had appropriate liability coverage. Procurement of the marine and burglary policies also constituted a breach of the defendants' agreement with the plaintiff. Although the record contains conflicting testimony concerning these issues, it was the trial judge's duty to assess the credibility of the witnesses and we cannot say his conclusion is against the manifest weight of the evidence.

The defendants next argue the court erred in concluding that the plaintiff was not under a duty to read the inland transit policy and was not bound by its terms. They rely on *Pittway Corp. v. American Motorists Insurance Co.* (1977), 56 Ill. App. 3d 338, 370 N.E.2d 1271, where the

court found that the burden was on the plaintiff/insured to know the import and meaning of an insurance contract which it accepts and retains.

We cannot accept this argument. First, unbeknownst to the plaintiff, the policy was cancelled effective the date of issuance. We believe it would be illogical to hold that a party can waive legal rights by failing to read a policy which never took effect. Second, the defendants argue that the inland transit policy, had it not been cancelled, would have provided the desired coverage. In light of this assertion of proper coverage, their argument that the plaintiff either read the policy and should have notified defendants of any claimed discrepancies or should have read the policy is without merit.

The defendants also argue the trial court erred in finding that the plaintiff had met its obligation to tender defense of claims to the defendants.

■■ In *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24, the supreme court wrote:

> "In determining whether the insurer owes a duty to the insured to defend an action brought against him, it is the general rule that the allegations of the complaint determine the duty. If the complaint alleges facts within the coverage of the policy or potentially within the coverage of the policy the duty to defend has been established." 64 Ill. 2d 187, 193, 355 N.E.2d 24, 28.

We cannot accept the defendants' argument. First, we know of no rule to the effect that defenses must be tendered to an insurance broker as opposed to the insurer. Secondly, under the *Peppers* rule, the plaintiff was under no obligation to tender the defense of claims against it to any party. The first two claims arose at or before the time the Hartford marine insurance policy went into effect and that policy would have afforded the plaintiff no protection. The same is true of the Transamerica burglary policy. The inland cargo policy, while arguably providing the desired coverage, was retroactively cancelled the same day it went into effect. There was thus no active policy at the time of the second two claims and, therefore, no one to whom the defenses should have been tendered.

The defendants next argue one item of alleged damages was not properly attributable to them. In its proof of damages the plaintiff introduced four complaints from Federal district court cases, in which Omni was a named defendant, concerning damage claims. Three of the four claims clearly arose during the effective dates of the Hartford and Transamerica policies which did not provide the desired coverage. The defendants argue the earliest claim, that brought by Nichiman, was not a proper item of damages because it arose before the effective date of the Hartford policy.

■■ We agree. Although the plaintiff was billed for the Hartford policy in

September of 1973, the policy itself shows that it was not effective until November of that year and the Nichiman claim arose in October of 1973. Therefore, the judgment must be reduced by the amount of attorneys' fees attributable to the defense of the Nichiman claim.

The defendants also argue the trial court erred in admitting into evidence the unpaid invoices of plaintiff's attorneys without proof of reasonableness of the charges. The $9,613.43 judgment awarded the plaintiff below represents a $5,500 settlement which disposed of one of the four claims, and the $4,113.43 balance is the amount of attorneys' fees incurred by the plaintiff in defending the four claims. In addition to the attorneys' bills, the plaintiff introduced into evidence three cancelled checks: one for $5,500 representing the settlement; and two checks for attorneys' fees in the amount of $165 and $359.15 respectively.

■■ The law is well settled that to recover attorneys' fees as damages it is necessary to show (1) that an obligation was incurred as a result of the defendant's wrongdoing; and (2) that the amount of the obligation is reasonable. (*McCormick on Damages* §70, at 254 (1935); *Brosam v. Employer's Mutual Casualty Co.* (1965), 61 Ill. App. 2d 183, 209 N.E.2d 350.) While a paid bill is considered *prima facie* proof of reasonableness (*Wicks v. Cuneo-Henneberry Co.* (1925), 319 Ill. 344, 150 N.E. 276 (medical bills); *Lucas v. Bowman Dairy Co.* (1964), 50 Ill. App. 2d 413, 200 N.E.2d 374 (bills for electrical work and window lettering); *Brosam*), there is no similar presumption in favor of unpaid bills.

■■ The plaintiff's only evidence concerning a large proportion of the attorneys' fees consisted of unpaid bills. While those bills contain great detail concerning the nature of the services performed, they do not contain any information concerning the total number of hours expended in rendering those services or the hourly rates of the attorneys. Additionally, the plaintiff presented no expert testimony concerning the reasonableness of the unpaid bills.

Therefore, the plaintiff's judgment must be reduced accordingly. The only items of damages proved *prima facie* reasonable with cancelled checks were the $5,500 settlement and attorneys' fees in the amount of $165 plus $359.15. Because the $359.15 check appears to represent payment of the $320.30 bill attributable to the Nichiman claim which was not a proper item of damages, we must reduce the judgment further in the amount of $320.30.

For the foregoing reasons the judgment of the circuit court of Cook County is reduced from $9613.43 to $5703.85.

The judgment is affirmed as modified.

JOHNSON and LINN, JJ., concur.