CONSOLIDATED FREIGHTWAYS CORPORATION, Plaintiff,

v.

NIEDERT TERMINALS, INC., Defendant.

No. 84 C 1535.

United States District Court, N.D. Illinois, E.D.

June 12, 1985.

D. Sidney Condit, Bell, Boyd & Lloyd, Chicago, Ill., for plaintiff.

John R. Doyle, John J. Jawor, McDermott, Will & Emery, William Levander, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Consolidated Freightways Corporation ("Consolidated") has charged Niedert Terminals, Inc. ("Niedert") with breach of warranty and fraudulent misrepresentation in connection with Niedert's sale of a trucking terminal to Consolidated. Each party has filed a Fed.R.Civ.P. ("Rule") 56 summary judgment motion: Consolidated as to the breach of warranty counts and Niedert as to all counts. For the reasons stated in this memorandum opinion and order, Niedert's motion is granted (and of course Consolidated's is therefore denied).

### *Facts* [1]

In 1956 Niedert bought a parcel of vacant land in unincorporated Cook County. In 1957 Niedert built a motor freight terminal on the property, comprising an office building, a loading dock and a parking and loading yard surfaced with crushed stone and gravel. All the improvements conformed to the County's zoning requirements.

In 1974, at Niedert's request, the City of Des Plaines ("City") enacted an ordinance annexing Niedert's property. Under City's zoning ordinance any land so annexed was automatically zoned Single Family Residential. Niedert promptly applied for and was granted rezoning to "M-2 General Manufacturing District."

City's Zoning Ordinance of 1960 (the "Ordinance") [2] § 9.1.8.4.2.1 [3] requires all off-street parking and loading facilities to be paved with a "hard surface." However, a grandfather clause in Section 9.1.1 provides an exemption for off-street parking and loading facilities "[f]or all buildings and structures erected and all uses of land established" before 1960, and there is a comparable grandfathering of nonconforming uses in Section 11.3.1.

In 1973 (before the annexation) Niedert had considered extending its loading dock and paving the yard. It ordered a set of plans to be drawn covering both proposed improvements. Later in 1973 Niedert decided against paving when cost estimates proved prohibitive. Instead it decided to proceed only with the dock extension plans.

Accordingly, on the same day in 1974 that City annexed the property, Niedert applied for two City permits to begin the dock extension work. One application covered the footings and foundation and the other applied to the building extension. Niedert attached to the permit applications its plans showing the proposed dock extension. Because those plans were still in the form originally prepared for Niedert, they contained one page with the no-longer-contemplated paving and drainage plans (for which no permit was sought). City ultimately approved the applications, issuing Building Permit 9417 to "alter" a "truck terminal building." City required a permit fee of $600 to cover the work Niedert "estimated at $150,000." [4]

1. Rule 56 imposes on the party moving for summary judgment the burden of establishing the lack of a genuine issue of material fact. *Korf v. Ball State University,* 726 F.2d 1222, 1226 (7th Cir.1984). For that purpose the court must, in viewing the evidence, draw all reasonable inferences in the light most favorable to the nonmovant. *Hermes v. Hein,* 742 F.2d 350, 353 (7th Cir.1984). Throughout this opinion the recitals of facts adhere to those principles, with Consolidated treated as the nonmovant (because this opinion ultimately rules in Niedert's favor). All facts are drawn from the parties' Stipulation of Facts unless otherwise indicated.

2. Post-1960 amendments to the Ordinance have not altered it in any respect material to the present controversy.

3. All further citations to the Ordinance will simply take the form "Section—."

4. That amount clearly reflected only the dock extension work. Consolidated Rule 12(e) Statement of Supporting Uncontested Facts ¶ 20.

Niedert completed the dock extension in 1974 and promptly occupied and used the new area. It never obtained a final inspection or certificate of compliance from City as required by City's building code (the "Code"). However, City never objected to either Niedert's or (later) Consolidated's use and occupancy of the new structure.[5]

In 1979 Niedert sold the entire facility to Consolidated. During negotiations Consolidated inspected the premises—including the yard—several times. Both parties recognized the yard would require some repairs after the winter, including "grading, graveling and filling ... chuckholes" (Complaint Ex. D). Initially Niedert agreed to perform those repairs (id.), but ultimately the parties agreed the yard would be transferred "as is" in all respects save the removal of debris by Niedert (Amendment to id.).

In 1975 Niedert had obtained a soil inspection report covering the yard. That report had revealed a number of inadequacies in the subsoil, particularly excessive moisture content and high water table levels. Niedert did not reveal the report to Consolidated during or after their negotiations (Complaint Count III ¶ 15; Answer Count III ¶ 15).

During the course of negotiations Consolidated sought assurance from Niedert as to the property's compliance with the Ordinance and the Code. Niedert had obtained in 1974—after submitting its permit applications and plans to City—a "Certificate of Zoning" from City Zoning Administrator Michael E. Richardson ("Richardson") (Stip.Ex. 6):

This certifies that the proposed building, structure and/or land use complies with all Zoning Ordinances of the City of Des Plaines.

On February 16, 1979—before execution of the Niedert-Consolidated contract (the "Contract," Complaint Ex. A)—Niedert obtained Richardson's certification that the 1974 certificate was "still in full force and effect." [6]

Niedert warranted in Contract Art. VII(d):

that all improvements on said property conform to applicable local laws and ordinances, that the improvements are conforming uses under all applicable zoning and ordinances, and that Niedert has not received any notice from any local, state, or federal governmental authority nor has any knowledge of any zoning, building, fire, or environmental law or health code violations with respect to the Niedert property that has not heretofore been corrected.

Up to the date Niedert sold the property to Consolidated City, had never informed Niedert that:

1. "its use and occupancy of the property was unlawful";

2. "a certificate of compliance must be obtained for any of the construction work that had been performed on the property"; or

3. "the construction of the building violated the City's Building Code." [7]

---

**5.** In October 1977, without notice to or knowledge of Niedert, City declared forfeit a $1,000 bond Niedert had posted for the permits. That fact is really of no consequence to the issues discussed here.

**6.** Consolidated has filed—and Niedert has moved to strike in large part—a supplemental affidavit of Richardson containing (1) his legal conclusions as to the interpretation of the Ordinance and (2) his interpretation of the plans when the permits were applied for. Although this Court's disposition of the summary judgment motions renders unnecessary resolution of the motion to strike, the challenged matters in the supplemental affidavit appears both improper and irrelevant:

1. Rule 56(e) requires that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Richardson's legal discussion fails on all counts.

2. Richardson's legal opinion and his interpretation of the plans are in any event irrelevant unless he communicated them to Niedert—which his affidavit shows he did not.

**7.** These quotations are drawn from Niedert's Rule 12(e) Statement of Uncontested Material Facts ¶¶ 25–27. Because Consolidated's Rule 12(f) responsive submission does not deny any

In July 1979, after Consolidated had begun operating from the property, a City building department inspector orally advised Consolidated the Ordinance required Consolidated to pave the yard. Consolidated considered paving but instead decided merely to install a drainage system. It began that work without notifying City or obtaining a permit.

After Consolidated had spent $84,000 and completed about 75% of the drainage system, City learned of the work and ordered Consolidated to stop. Eventually City and Consolidated (without having involved Niedert) worked out an agreement allowing Consolidated to complete the drainage work on the condition that Consolidated would pave the yard as well. Consolidated completed both projects at a cost of $480,-000.

### Breach of Warranty

Complaint Counts I and II charged Niedert violated its express warranties in three respects:

    1. Its yard did not conform to the Ordinance.

    2. Niedert's occupation of the dock extension and its failure to obtain a final inspection and certificate of compliance violated the Code.

    3. Niedert knew of those violations.

But Consolidated has now conceded City never notified Niedert of any zoning or building code violation. And in response to Niedert's motion Consolidated has not produced a shred of evidence Niedert was aware of any violation.[8] Consequently the only warranty issues that need discussion

depend on whether Niedert committed an actionable breach of its warranty of compliance with all City codes, ordinances and regulations.

### 1. Compliance with the Ordinance

Consolidated claims Niedert breached its warranty of conformance to the Ordinance because the yard was not paved. One of Niedert's responses[9] is that reasonable reliance is a prerequisite to recovery for a breach of warranty. *Michuda v. Sanitary District of Chicago*, 305 Ill.App. 314, 349–50, 27 N.E.2d 582, 597–98 (1st Dist.1940). Consolidated retorts by urging *Michuda* has been overruled by *Vasco Trucking, Inc. v. Parkhill Truck Co.*, 6 Ill.App.3d 572, 286 N.E.2d 383 (4th Dist.1972) (and Consolidated also cites some earlier cases in support of the same substantive rule it ascribes to *Vasco*). But even were that true (a matter as to which this Court need not express an opinion) Consolidated's claim must fail.

*Vasco*, 6 Ill.App.3d at 576, 286 N.E.2d at 386 emphasized the very nature of a warranty is to represent *facts*, quoting for that purpose *Metropolitan Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir.1946) (L. Hand, J.):

> A warranty is an assurance of one party to a contract of the existence of a fact upon which the other party may rely. It is intended precisely to relieve the promisee of any duty to ascertain the fact for himself; it amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue, for obvi-

---

of the statements, they are established as facts for purposes of this case.

**8.** That lack of evidence also disposes of Count III to the extent Consolidated there charges fraudulent misrepresentation of the property's zoning or building code status.

**9.** Niedert also submits extensive argument to urge the yard is not subject to the Ordinance's paving requirement, while Consolidated spends as much effort in vigorous advocacy on the other side of the issue. Indeed, though this Court has foregone the mildly depressing chore of counting the pages devoted to that issue, it

clearly occupied the bulk of the more than 250 pages of submissions (memoranda and General Rule 12(e) and 12(f) statements) on the current motions. Though preliminary scrutiny indicated Niedert appeared to have the better of the argument on that score, ultimate resolution of the complex issue is unnecessary in light of this Court's treatment of the legal effect of Niedert's warranty. One particularly complex corner of the dispute—not fully analyzed by the parties—is the effect to be given Consolidated's caving in to City's position without involving Niedert in the decision whether settlement should take place and without asserting any legal challenge to City's demand.

ously the promisor cannot control what is already in the past. To argue that the promisee is responsible for failing independently to confirm it, is utterly to misconceive its office.

*Vasco, id.* also quoted Black's Law Dictionary, the current edition (5th ed. 1979) of which (at page 1423) defines warranty as:

A promise that a proposition of fact is true.... A promise that certain facts are truly as they are represented to be and that they will remain so, subject to any specified limitations.

■ But the Illinois rule as to representations of *law* is very different indeed. Where as here the factual posture of the property (its being unpaved) is patent and equally known to the purchaser, a seller's representation as to the property's conformity to the zoning regulations in that respect is solely one of law.[10] *Hamming v. Murphy,* 83 Ill.App.3d 1130, 1135, 39 Ill. Dec. 435, 439, 404 N.E.2d 1026, 1030 (2d Dist.1980) (citations omitted) said in a case also involving zoning law:

Generally, one is not entitled to rely upon a representation of law as both parties are presumed to be equally capable of knowing and interpreting the law.... The existing zoning of the property and the procedures under which a zoning ordinance could be modified, or a variance

or permit could be granted, are a matter of public record available to both parties. We conclude plaintiff was charged with knowledge of the permitted uses of this property under applicable zoning ordinances and cannot base her action for rescission on any contrary representations made by defendant.

■ Here the only significant *fact* bearing on the yard's compliance with the Ordinance was its unpaved condition. Consolidated concedes it was well aware of that condition by virtue of its inspections. And whether an unpaved yard complied with the Ordinance was a pure question of *law* —a matter that Niedert was in no better position than Consolidated to evaluate. Hence *Hamming* bars Consolidated's reliance on that "warranty" (if that term is even applicable) of law, and the pre-*Hamming* decision in *Vasco* cannot alter that result.

### 2. *Compliance with the Code*

■ Consolidated does not claim Niedert violated any substantive Code provision in connection with the dock extension work.[11] Rather Consolidated contends Niedert violated the Code's procedural rules by failing to obtain a final inspection and certificate of compliance before it occupied the extension.

---

**10.** To be sure, *Kinsey v. Scott,* 124 Ill.App.3d 329, 338–39, 79 Ill.Dec. 584, 591, 463 N.E.2d 1359, 1366 (2d Dist.1984) held an apartment building seller's implied representation the building conformed to building codes to be primarily a representation of fact. But in that case the building's status turned on statements the seller had made to the city's building department in his permit applications. Thus the buyer's knowledge of the building codes alone could not have enabled him to determine the building's conformance (indeed, *Kinsey* approved the *Hamming* principle next referred to in the text, but distinguished that case on precisely the basis stated in this footnote). No such inequality of knowledge between Consolidated and Niedert was involved here.

**11.** No Code provision required the yard to be paved. Consolidated attempts to argue paving was required by Code § 5.3.1(n)(1) (Stip Ex. B):

All work performed under a permit issued by the Building Commissioner shall conform to

the approved application and plans, and any approved amendments thereto. It shall be unlawful for any owner, agent, architect, structural engineer, contractor or builder ... to make any departure from drawings or plans as approved by the Building Commissioner, of a nature which involves any violation of the provisions of this ordinance.

According to Consolidated, once Niedert was issued permits based on plans that included a page with paving specifications (even though the permits plainly did not extend to any paving work), Niedert was required to implement the plans in every respect. But the quoted provision does not mandate that work be undertaken in the first instance. Rather it mandates that once work has begun it cannot be performed other than in the previously-approved way. Moreover, Consolidated concedes in the Stipulation of Facts Niedert was never issued a permit for paving. Niedert could therefore not even have begun paving without thereby violating the Code's permit requirement.

■ Of course that omission did not at all injure Consolidated in its use of the new dock, because City never objected to Consolidated's use and occupancy of the premises any more than it had objected to Niedert's. And in its zeal to establish Niedert's asserted Code violation,[12] Consolidated has wholly failed to explain how that alleged violation caused any other damage to Consolidated. Certainly no causal nexus has been shown to link the "violation" to the unpaved yard.

■ In that respect Consolidated's position appears to be that *if* City had conducted a final inspection of the dock extension, it *might* have noticed the paving had not been done and *might* have informed Niedert it was required to pave the yard.[13] But that contention, based as it is on a chain of attenuated sheer speculation, is insufficient to establish a causal link in legal terms between the violation and the injury. *Bugariu v. Conley*, 93 Ill.App.3d 571, 573, 49 Ill.Dec. 29, 31, 417 N.E.2d 719, 721 (1st Dist.1981); W. Keeton, *Prosser & Keeton on the Law of Torts* § 41, at 269 (5th ed. 1984).

### Fraudulent Misrepresentation

Consolidated claims Niedert made other misrepresentations, in this instance bearing on the yard's physical condition, during the negotiations over purchase of the terminal. Complaint Count III charges those misrepresentations took both active and passive forms:

1. In response to Consolidated's oral inquiries, Niedert falsely represented the yard drained well and weathered the winter without any significant problems (Count III ¶¶ 21–23).

2. Niedert failed to inform Consolidated of the existence or conclusions of the 1975 soil inspection report revealing problems with the yard (Count III ¶¶ 16, 27–28).

*Kinsey*, 124 Ill.App.3d at 335, 79 Ill.Dec. at 589, 463 N.E.2d at 1364 rehearsed the familiar elements of a fraudulent misrepresentation claim:

(1) false statement of material fact (2) known or believed to be false by the party making it, (3) intent to induce the other party to act, (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance.

Were Niedert now advancing a Rule 12(b)(6) motion, challenging the Complaint's sufficiency to state a claim in those terms, the motion would of course have to be denied. But the parties have gone far beyond the pleading stage, into the world of Rule 56. And Rule 56(e) expressly prohibits Consolidated from now relying on the allegations in its Complaint:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth

**12.** Niedert denies any Code violation, and Consolidated has not clearly shown Niedert's conduct fits the "violation" description. Nonetheless for purposes of the current motions a violation will be assumed.

**13.** That argument seems to underlie Richardson Aff. ¶¶ 7–13. Richardson's suggestions to that effect are unpersuasive for two reasons:

    1. Clearly the permits issued to Niedert covered only the dock extension. Accordingly an inspector determining Code compliance under those permits would have no cause to concern himself with the yard.

    2. Richardson claims his 1979 certification of zoning compliance was based on his belief the 1974 paving plans were still "open" and would eventually be carried out. If that is not

simply a post hoc rationalization and he really had counted on compliance with the plans and not the permits (which controlled the work Niedert had a right to do), it is hard to believe that five full years after he approved them Richardson would not at least inquire of Niedert why it had not yet performed the paving. And if a full five-year delay did not prompt Richardson to take action in 1979, it is even more difficult to believe an inspector would have been concerned in 1974 with Niedert's failure to have paved the yard less than a year after approval of the plans.

For current purposes the controlling factor is that Consolidated has not established its set of dependent hypotheticals as a reasonable inference creating a material fact issue.

specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

■ This Court has repeatedly held a non-movant may not hold back evidence on a summary judgment motion. See, e.g., *Keene Corp. v. International Fidelity Insurance Co.*, 561 F.Supp. 656, 665–66 (N.D. Ill.1982). As *Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir.1972) put it:

> A party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial, for in doing so he risks the possibility that there will be no trial. A summary judgment motion is intended to "smoke out" the facts so that the judge can decide if anything remains to be tried.

Though our Court of Appeals has not spoken to this issue until recently, it has now embraced the *Keene* principle not only by its specific approval in the course of affirming *Keene*, 736 F.2d 388, 393 (7th Cir.1984) but by its opinion last month in *Publishers Resource, Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir.1985).

In response to Niedert's motion Consolidated has produced no evidence at all in support of its Count III allegations. Niedert's Answer to the Complaint admits only (by its failure to deny, see Rule 8(d)[14]) the existence[15] and nondisclosure of the soil inspection report.[16] In addition the parties

agree there was a mutual recognition the yard would require some grading, gravel and chuckhole filling after the 1979 winter.

■ Those facts alone are insufficient to raise a genuine question of material fact on Consolidated's behalf. They establish only (1) the parties recognized there were some repairs that should be made and (2) Niedert failed to divulge certain information about defects. There is no evidence that Niedert represented the yard was in better shape than it was or even that Niedert engaged in a material omission by its nondisclosure of the report when it had the duty to disclose. Though Rule 56 entitles the nonmovant to reasonable inferences from the evidentiary facts, it does not require the court to construct inferences where the necessary building blocks for that construction have not been furnished it. Consolidated has simply failed to meet its Rule 56(e) burden.

### Conclusion

There is no genuine issue of material fact, and Niedert is entitled to a judgment as a matter of law. This action is dismissed with prejudice.

### Appendix

1. *Pleadings as to Allegedly False Statements*

Count III ¶¶ 21–23 deal with Niedert's alleged affirmative misrepresentations. In

---

14. So that the full flavor of what Niedert has and has not admitted by its pleading may be appreciated, this Court has set out the relevant paragraphs of the Complaint and Answer in full in the Appendix to this opinion.

15. Consolidated's Complaint Count III ¶ 15 described and quoted excerpts from the report. Niedert's Answer admits the report's existence (both are fully set out in the Appendix to this opinion). However, neither party saw fit to provide this Court with a copy of the report. This Court must therefore assume Consolidated's characterization is accurate.

16. Consolidated could perhaps seek to argue in a technical sense that Niedert's Answer to Complaint Count III ¶¶ 21–23 (see Appendix) admitted (by its failure to deny) at least that Consolidated *inquired* about the condition of the yard, its drainage capacity and its ability to withstand the stress of winter weather. Were that so, an

inference might possibly be drawn from the facts set out in the text that Niedert responded in a misleading manner. But Niedert's Answer, fairly read, denies the allegations of those paragraphs in their entirety—even though the Answer specifically focuses on Niedert's responses rather than Consolidated's questions. Any narrower reading of the Answer would violate the liberal pleading spirit of the Rules. More critically, the current motions for summary judgment squarely put into issue all Consolidated's claims. If Consolidated had *evidence* to support the linchpin for its misrepresentation (or misleading omission) claim, the "no-holding-back" concept described earlier in the text obliged Consolidated to tender that evidence now. It is simply insufficient to rely on any notion of pleading admissions for that purpose, given the nature of the pleadings here.

each instance the Complaint paragraph is followed by the corresponding paragraph in the Answer:

21. During the course of plaintiff's initial inspection of the property, plaintiff's representative asked defendant whether the yard complied with all necessary codes. Defendant responded for the purpose of inducing plaintiff to rely on its response and thus to purchase the property by stating that the yard complied with all building code requirements. Defendant further responded by saying words to the effect that no other topping was necessary and that it used bankrun gravel to fill the holes in the yard.

21. Niedert's personnel have no recollection of making the statements referred to in paragraph 21, but if such statements were made, they were true statements.

\* \* \* \* \* \*

22. While making its initial inspection plaintiff also asked defendant's personnel then present if there were any problems with the yard's drainage. Defendant replied that there weren't any and that normally it drained very well around defendant's property, or words to that effect.

22. Niedert's personnel have no recollection of making the statements referred to in paragraph 22, but if such statements were made, they were true statements.

\* \* \* \* \* \*

23. During the course of said inspection, plaintiff asked Niedert how the yard usually held up through the winter. Niedert responded by stating words to the effect that the yard went through fine; that it (Niedert) only had to put down a little gravel and have it graded every so often; that it bought gravel locally; and that it did not cost too much to have the gravel brought in.

23. Niedert's personnel have no recollection of making the statements referred to in paragraph 23. The "Niedert Inspection Report," prepared by Consolidated personnel, stated that "the yard

appeared to be in good condition" even though "grading, graveling, filling all chuckholes," was needed. (See paragraph 17(b) above.)

### 2. Pleadings as to Undisclosed Soil Inspection Report

Once again Complaint ¶ 15 is followed by the corresponding paragraph in the Answer:

15. On or about July 15, 1975 Niedert's architects for the project, Roy T. Christiansen-S. Tinucci, Architects Inc. ("Christiansen and Tinucci"), obtained on Niedert's behalf a certain report from Novak, Dempsey & Associates, Inc. ("Novak, Dempsey"), entitled "Soil Investigation Niedert Motor Service For Christiansen & Tinucci" dated July 15, 1975. The report set forth the location and results of 17 subsurface soil borings Novak, Dempsey made on the Niedert property. Among the findings stated in the report were the following: 1) the existence of silts that contained varying amounts of clay, sand and gravel under the surface materials; 2) the existence of "top soil or otherwise organic material;" 3) the existence of "water within 1.5 feet of finished grade" at three locations "at completion of drilling operations;" 4) the existence of "moisture contents of 20% or more" in 10 locations, and in the case of four of those, "these high moisture contents were within 4 feet of the existing grade, therefore possibly contributing to frost leave effects;" 5) "the resultant high water tables in [four] borings ... makes this subgrade also susceptable [sic] to frost heave." Because "[t]o remove all of the wet, low bearing or otherwise undesirable material would result in high cost," Novak, Dempsey recommended, among other things, with respect to the paving of the yard, that

"the organic material at the west end of the property be removed to the depth of 4.0 feet below finished grade and be replaced by approved suitable fill compacted to at least 95% standard proctor density."

15. Niedert makes no answer to paragraph 15, since the Report speaks for itself.