GALO L. TAN, Plaintiff-Appellee, v. BRUCE C. BOYKE, Defendant-Appellant (Zion State Bank and Trust Company, as Trustee, Defendant).

Second District No. 2—86—0170

Opinion filed May 6, 1987.—Supplemental opinion filed on denial of rehearing June 16, 1987.

Bogdan Martinovich, of Ray & Glick, Ltd., of Libertyville, for appellant.

Murray R. Conzelman, of Conzelman, Schultz, Snarski & Mullen, and Charles M. May, both of Waukegan, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiff, Dr. Galo Tan, filed a three-count amended complaint in the circuit court of Lake County arising from a contract between himself and the defendant, Bruce Boyke, by which Boyke had agreed to sell plaintiff two apartment buildings at 905 and 1005 Baldwin Avenue in Waukegan.

The trial court dismissed counts I and III, which are not relevant to this appeal, and the case proceeded to trial solely on count II, which alleged fraudulent misrepresentation. After the trial had concluded, the court permitted the plaintiff to amend his complaint to add count IV, which alleged negligent misrepresentation, and count V, which alleged a violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*) (hereinafter referred to as the Act). The court concluded that the plaintiff had established all of the elements of both intentional and negligent fraud and awarded him $68,761 as damages. The court expressly concluded that Boyke's testimony was not credible and additionally held that he had violated the Act, but it awarded no additional damages based on count V. The defendant appeals.

The following facts were adduced at the trial. Bruce Boyke constructed the two apartment buildings in 1964 and 1965. Boyke owned and managed the buildings and had owned the subject property prior to their construction. The 905 building contains 35 units and the 1005 building has 31 units. The building permit application for the 1005 building listed the site as lot 5. The application for the 905 Baldwin building listed its site as lot 4 and the south 60 feet of lot 5. Thus both applications included the south 60 feet of lot 5, incorrectly representing that an additional 60 feet of land was available for the two buildings than actually was. Additionally, the construction permit issued for the 905 building permitted construction of only 31 units, although it was actually constructed with 35 units. The result of these discrepancies was a greater density of housing units with less available parking than the applicable zoning ordinances permitted.

Boyke stated that he had only a vague recollection of the fact that both permits included the south 60 feet of lot 5. He explained that it had been his practice to give his building plans to Harry Poe, who was the building commissioner for the city of Waukegan (the city) at the time and who has since died. Poe would then tell Boyke that he (Poe) would "take care of everything." Boyke explained the discrepancy in the number of units by stating that he had discussed the matter with Poe. According to Boyke, Poe orally approved a change in the 905 building's design to replace some two-bedroom units with efficiencies. Boyke admitted that he knew the written permit allowed construction of only 31 units but stated that he believed Poe's oral approval made all of the units legal. The city never cited Boyke for violations of its zoning or building codes. Boyke did not tell the plaintiff about his dealings with Poe or the discrepancies in the permits although he knew that the plaintiff believed all 66 units to be lawful

ones.

On July 5, 1979, Boyke and Tan signed a contract for the sale of the buildings for $1,786,000 and setting the closing date for September 28, 1979. Tan intended to convert the units into condominiums. Tan obtained a loan commitment for $1,450,000 from B.B. Cohen & Company and retained the law firm of Rudnick & Wolfe (hereinafter referred to as R & W) to represent him in the matter. R & W then attempted to meet all of B.B. Cohen's requirements so that the transaction could be completed. After repeatedly failing to respond to R & W's requests for the plat of survey, the original certificates of occupancy, and original building plans, Boyke finally furnished the plat of survey and informed R & W that he did not have the other documents. R & W went to the city and verified that the property was zoned for multifamily residences and had never been cited for violations of the city's building or zoning codes. It then obtained copies of the certificates of occupancy from the city and noticed that the city had authorized occupancy of only 31 units for the 905 building. On further investigation, R & W located the original applications for building permits and discovered the inclusion in both permits of the south 60 feet of lot 5. It then obtained copies of the city's current zoning ordinance and the ordinance which was in effect at the time the apartments were constructed. Using the square footage contained in the plat of survey, R & W determined that the buildings were in violation of both the prior and the current zoning ordinances. R & W inquired into obtaining a zoning variation and was advised by the city that such a request would probably be refused.

The parties then met to discuss the matter, and Tan suggested a reduction in the purchase price to reflect the fact that he would be unable to use all 66 units. Boyke refused. Tan then refused to complete the deal, and Boyke returned his earnest money. It is undisputed that Tan had already incurred substantial fees for B.B. Cohen's loan commitment, end loan commitments made by several banks, a mortgage broker's services, an appraisal of the property, a marketing analysis, an engineering report, B.B. Cohen's attorney fees, and R & W's fees. Boyke denied liability for those costs, and this suit followed.

On appeal, the defendant argues that: (1) the evidence does not support the court's conclusion that he made a fraudulent misrepresentation; (2) the court erred in finding him liable for negligent misrepresentation; (3) the court erred in applying the Act to this transaction; (4) the plaintiff elected to rescind the contract and was therefore barred from bringing an action for damages; and (5) plaintiff's damages were not properly proved.

I

■■■ The following are the elements of an action for fraudulent misrepresentation: (1) a false statement of material fact; (2) by a party who knows or believes it to be false; (3) with the intent to induce another to act; (4) action by another in reliance on the statement's truth; and (5) injury to the other resulting from that reliance. (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286.) In addition, the injured party must have been justified in relying on the other's statement. (79 Ill. 2d 282, 286.) An affirmative statement is not always required, however, and fraud may also consist of the omission or concealment of a material fact if accompanied by the intent to deceive under circumstances which create the opportunity and duty to speak. (See, *e.g.*, *Wright v. Richards* (1986), 144 Ill. App. 3d 450, 457; *Central States Joint Board v. Continental Assurance Co.* (1983), 117 Ill. App. 3d 600, 604; *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 195.) A trial court's finding of fraud will not be disturbed unless it is against the manifest weight of the evidence. (*Halla v. Chicago Title & Trust Co.* (1952), 412 Ill. 39, 47.) The defendant argues that plaintiff has failed to demonstrate virtually every element of a fraud. We disagree.

In *Kinsey v. Scott* (1984), 124 Ill. App. 3d 329, this court was presented with a situation very similar to the one present here. The defendant in *Kinsey* sold a five-unit apartment building to the plaintiff, knowing that she intended to use one unit for herself and would rent the remaining four. He did not inform her that the fifth apartment was constructed without a building permit and that he consulted a building inspector after its completion and was told that it was by then too late to obtain one. (124 Ill. App. 3d 329, 333.) The *Kinsey* court concluded that the defendant's conduct constituted fraud, stating that the "defendant represented the building was a five-unit building, which plaintiff relied on, when in fact it was not lawfully a five-unit building. This was a misrepresentation." (124 Ill. App. 3d 329, 336.) The court noted further that "[h]aving represented to plaintiff that he was selling a five-unit apartment building, his concealment of the actual facts surrounding the construction of the basement apartment shows an intention to deceive, and under the circumstances creates a duty to speak." 124 Ill. App. 3d 329, 337.

We find the *Kinsey* decision to be directly on point. Boyke represented to Tan that the two apartment buildings contained a total of 66 units, when in fact at least five of the units were unlawful. This clearly was a misrepresentation. In addition, Boyke knew that Tan intended to use all of the units. The circumstances therefore clearly cre-

ated a duty to reveal the discrepancies between the square footage and number of units reported on the building permit applications and the actual size of the property and the number of units constructed.

Boyke argues that he relied on Poe's assurances and believed that the buildings were entirely legal. However, the trial court specifically found that Boyke's testimony was not credible and that he knew the buildings were constructed in violation of the city's zoning ordinance. We recognize the trial court's superior opportunity to evaluate witness credibility, and we are bound to accept its findings of fact unless they are clearly against the manifest weight of the evidence. (124 Ill. App. 3d 329, 337; *Chicago Title & Trust Co. v. First Arlington National Bank* (1983), 118 Ill. App. 3d 401, 410.) Here, the trial court's findings that the defendant acted with knowledge and with intent to induce plaintiff to act are not against the manifest weight of the evidence. See *Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 50 (noting that the defendant's knowledge may be demonstrated by circumstantial evidence).

We additionally reject the defendant's argument that plaintiff's damages were not proximately caused by his misrepresentation. In an action for fraud, "consequential damages proximately resulting from the fraud are recoverable." (*Home Savings & Loan Association v. Schneider* (1984), 127 Ill. App. 3d 689, 695, *modified* (1985), 108 Ill. 2d 277; see also Restatement (Second) of Torts sec. 549(1)(b) (1977) (expenses incurred in preparing to use property in a manner the defendant has represented as appropriate are recoverable).) Tan clearly believed that the buildings and all of their units were lawful. He went to great expense to secure financing commitments and to meet the financing company's requirements prior to the closing, as was necessary, customary, and clearly foreseeable in a $1.7 million real estate transaction.

We reject defendant's contention that, even had the buildings been constructed in conformity with the zoning ordinance in effect at the time of construction, it would still have been unsuitable for condominium conversion at the time the contract was signed. The evidence presented at the trial does not support such a conclusion. Boyke produced no evidence and cited no authority with regard to the feasibility of converting into condominiums an apartment building that is a legal nonconforming use. Rather, plaintiff's expert testified only that this building, as actually constructed, was not a legal nonconforming use, but was illegal. We therefore conclude that plaintiff's damages were proximately caused by the defendant's failure to disclose the irregularities that occurred during construction.

Defendant argues that Tan's reliance on his silence was not justified, however, because it was an implied representation of law—not of fact— and because Tan had ample opportunity to investigate the applicable zoning requirements. He relies on a series of Illinois cases which have established that a misrepresentation as to compliance with zoning or building codes is a statement of law, the application of which both parties are presumed equally knowledgeable. In *Hamming v. Murphy* (1980), 83 Ill. App. 3d 1130, this court held that the defendant's statement that "all zoning 'red tape' had been taken care of so as to permit construction of apartments" (83 Ill. App. 3d 1130, 1132) could not constitute a fraudulent misrepresentation because "[t]he existing zoning of the property and the procedures under which a zoning ordinance could be modified, or a variance or permit could be granted are a matter of public record availablè to both parties." 83 Ill. App. 3d 1130, 1135.

In *City of Aurora v. Green* (1984), 126 Ill. App. 3d 684, this court applied the *Hamming* reasoning to hold defendants not liable for fraud where they had sold a building to plaintiffs and warranted that it was properly zoned for use as five residential units, when in fact it was located in a two-family residential zone and had been remodeled by defendants without city approval. (126 Ill. App. 3d 684, 685.) The court concluded that the "plaintiff could not reasonably rely on any representation made concerning either the existing zoning laws or their application to the property." (126 Ill. App. 3d 684, 685.) The court distinguished *Kinsey v. Scott* (1984), 124 Ill. App. 3d 329, discussed above, by concluding that the misrepresentation made there was one of fact, which an individual of ordinary prudence could not have discovered. *City of Aurora v. Green* (1984), 126 Ill. App. 3d 684, 689.

And in *Consolidated Freightways Corp. v. Niedert Terminals, Inc.* (N.D. Ill. 1985), 612 F. Supp. 1391, a United States District Court applied the *Hamming* rationale and refused to impose liability on the defendant corporation where it had assured the plaintiff that the property was in compliance with the city's zoning ordinances. (612 F. Supp. 1391, 1394.) The defendant had considered paving a loading area and had inadvertently submitted the paving proposal to the city with other construction plans which were actually carried out. (612 F. Supp. 1391, 1393-94.) The unpaved area was found to be in violation of the zoning ordinance after the property was sold to the plaintiff. (612 F. Supp. 1391, 1395.) The court concluded that, where the physical condition of the property is patent, a seller's representation as to its conformance to zoning regulations is a statement of law, on which

the purchaser may not rely. (612 F. Supp. 1391, 1396.) Boyke argues that, here, the presence of 66 units in the two buildings was patent and that plaintiff was obligated to determine independently whether the buildings were in compliance with the city's zoning regulations.

We find the defendant's cases inapposite. The *Consolidated Freightways* court distinguished *Kinsey*, noting that, in *Kinsey*:

> "[T]he building's status turned on statements the seller had made to the city's building department in his permit applications. Thus, the buyer's knowledge of the building codes alone could not have enabled him to determine the building's conformance ***. No such inequality of knowledge between [the parties] was involved here." (*Consolidated Freightways Corp. v. Niedert Terminals, Inc.* (N.D. Ill. 1985), 612 F. Supp. 1391, 1396, n.10.)

(See also *O'Brien v. Noble* (1982), 106 Ill. App. 3d 126, 130 (noting with reference to a misrepresentation regarding zoning requirements, that "liability will be found when the defendant misrepresents facts of which he possesses almost exclusive knowledge and the truth or falsity of which are not readily ascertainable by the plaintiff").) Here, the evidence reasonably implies that the defendant supplied the city with overlapping lot descriptions for the two buildings, and, based on that misinformation, was permitted to construct buildings with too little land for their size under the zoning ordinance and built one of them with more units than the building permit authorized. In addition, the plaintiff produced uncontroverted evidence that the only way those discrepancies could have been discovered was the way R & W actually discovered them—by obtaining and reviewing the plat of survey with an accurate square-footage figure and calculating the buildings' unit densities as well as those permitted by the applicable ordinances. The facts were clearly not readily discernible by a simple review of the ordinances as was the case in *Consolidated Freightways* and *City of Aurora*. Yet they were well known to the defendant.

 Defendant argues that the plaintiff nevertheless had ample time and opportunity to ascertain the facts and cannot excuse his own negligence by claiming to have relied on the defendant's representations. The general rule is that a party who makes a deliberate and intentional misrepresentation with knowledge that he has misled another may not escape liability by arguing that, by exercising reasonable care, the other could have discovered his fraud. (*Salisbury v. Chapman Realty* (1984), 124 Ill. App. 3d 1057, 1063; *Citizens Savings & Loan Association v. Fischer* (1966), 67 Ill. App. 2d 315.) "Conversely, a party is not justified in relying on representations made

58

when he had ample opportunity to ascertain the truth of the representations before acting." (*Salisbury v. Chapman Realty* (1984), 124 Ill. App. 3d 1057, 1063.) The issue is whether or not, considering the facts known to him and the facts which he would have known had he exercised ordinary prudence, the plaintiff had a right to rely on the defendant's false representations. *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286; *Central States Joint Board v. Continental Assurance Co.* (1983), 117 Ill. App. 3d 600, 607.

■ It is clear that only a complicated analysis of the plat of survey and the applicable zoning ordinances would have revealed to the plaintiff the irregularities in construction and the resulting illegality of the buildings. Without some indication that the buildings had been improperly or illegally constructed, it is unlikely that a reasonably prudent prospective purchaser would have undertaken so extensive an analysis of the ordinance. (*Cf. Chapman v. Hosek* (1985), 131 Ill. App. 3d 180, 187 (in determining whether plaintiff had a right to rely on the misrepresentation, it is relevant whether or not the information was of a type a reasonable prospective purchaser would have researched).) In addition, the means of obtaining the necessary information (the plat of survey) was in the defendant's control and was not made available to the plaintiff until he had already incurred great expense. (See *Central States Joint Board v. Continental Assurance Co.* (1983), 117 Ill. App. 3d 600, 606 (noting that reliance is ordinarily justified only when the parties do not have equal knowledge or access to it).) We conclude that the plaintiff reasonably and justifiably relied on the defendant's silence. The trial court's decision finding the defendant liable for fraudulent misrepresentation therefore was not against the manifest weight of the evidence.

II

■ Defendant next argues that plaintiff may not maintain an action for negligent misrepresentation to recover purely economic losses unless the defendant is in the business of supplying information for the guidance of others in their business affairs. We agree and reverse the trial court's decision with regard to count IV.

In *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, the Illinois Supreme Court held that a plaintiff may not seek recovery in a negligence action for purely economic losses. (91 Ill. 2d 69, 80.) The court noted with apparent approval, however, that such actions had been recognized in Illinois where the defendant has made intentional misrepresentations or where "one who is in the business of supplying information for the guidance of others in their busi-

ness transactions makes negligent representations." 91 Ill. 2d 69, 89; see also *Marino v. United Bank of Illinois* (1985), 137 Ill. App. 3d 523, 528 (dismissing negligent misrepresentation count where plaintiff did not allege that defendant was engaged in the business of supplying information to others); *Grass v. Homann* (1984), 130 Ill. App. 3d 874, 879; *Knox College v. Celotex Corp.* (1983), 117 Ill. App. 3d 304, 307-08. But see *Lehmann v. Arnold* (1985), 137 Ill. App. 3d 412, 420-21 (allowing recovery because misrepresentation was made in a public record which defendant should have realized would be relied upon by others).

While count II of plaintiff's complaint falls squarely within the first exception noted above, count IV is permitted by neither exception, as the defendant is clearly not in the business of supplying information to others. Count IV should therefore have been dismissed.

### III

■■ Boyke next argues that count V of plaintiff's complaint fails to state a cause of action because the Act does not apply to a private contract between two individuals. He relies on *Exchange National Bank v. Farm Bureau Life Insurance Co.* (1982), 108 Ill. App. 3d 212, and *Frahm v. Urkovich* (1983), 113 Ill. App. 3d 580. We find neither case applicable to the circumstances present here.

In *Exchange National*, the court concluded that the plaintiff's factual allegations regarding the defendant's conduct were contrived and ridiculous. (*Exchange National Bank v. Farm Bureau Life Insurance Co.* (1982), 108 Ill. App. 3d 212, 216.) It noted that plaintiff had failed to even allege that the conduct was part of defendant's usual practice and concluded that the Act could not be applied to every situation where "the only actual controversy is whether an isolated breach of contract occurred." (108 Ill. App. 3d 212, 215.) We believe the *Exchange National* court clearly concluded that there had in fact been no misrepresentation at all and that the plaintiff could properly have brought only an action for breach of contract. Boyke's conduct here, however, clearly amounted to a fraudulent misrepresentation.

In *Frahm* the court stated: "[W]e believe that the Act is intended to reach practices of the type which affect consumers generally and is not available as an additional remedy to redress a purely private wrong." (*Frahm v. Urkovich* (1983), 113 Ill. App. 3d 580, 586.) The *Frahm* court then would apparently require that the adverse effects of a defendant's deceptive practices are not limited solely to his dealings with this particular plaintiff. We find it unnecessary to decide whether the Act is inapplicable when the effects are so limited be-

cause that is not the situation here. While Bruce Boyke was not engaged in the business of selling real estate, he clearly had been engaged in the business of developing it. He testified at trial that the misinformation supplied in the building permits resulted from his practice of supplying his plans to Poe, who would "take care of everything." This practice, combined with defendant's purported belief that these dealings made everything legal and that they therefore need not be disclosed to purchasers, clearly was a business practice which could potentially affect many others.

 We also reject defendant's argument that Tan was not a consumer, as a plaintiff is not required to fall within the Act's definition of a consumer when the suit involves a real estate transaction. (*Beard v. Gress* (1980), 90 Ill. App. 3d 622, 627.) We therefore affirm the trial court's decision finding defendant liable under the Act.

## IV

 Boyke next argues that plaintiff elected rescission as his remedy and therefore may not now bring a suit for further damages. We reject this contention because the doctrine of election of remedies does not prevent a party from bringing an action in Illinois unless he has "formerly manifested an intent to seek one remedy and the defendant makes a substantial change of position in reliance upon that intention or a possibility of double recovery exists." (*Finke v. Woodard* (1984), 122 Ill. App. 3d 911, 919; *Kenny Construction Co. v. Hinsdale Sanitary District* (1982), 111 Ill. App. 3d 690, 698.) There is no evidence in the record that defendant changed his position in reliance on any action by plaintiff, and there is clearly no risk of plaintiff's receiving double compensation.

## V

 █ Defendant's final contention is that the plaintiff failed to sufficiently prove the amount of the attorney fees he incurred. A plaintiff seeking to recover attorney fees as damages must demonstrate that they resulted from defendant's misconduct and that the amount is reasonable. (See *e.g.*, *Omni Overseas Freighting Co. v. Cardell Insurance Agency* (1979), 78 Ill. App. 3d 639, 645.) As discussed above, the fees were clearly incurred as a result of the defendant's misrepresentation. In addition, a paid bill is *prima facie* proof that the amounts incurred were reasonable. (78 Ill. App. 3d 639, 645.) Defendant has produced no evidence to counter plaintiff's proof. We therefore reject defendant's contention.

In summary, we reverse the trial court's decision imposing liability

on defendant for negligent misrepresentation, but affirm its decision in all other respects.

Affirmed in part and reversed in part.

REINHARD and NASH, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE UNVERZAGT delivered the opinion of the court:
■■■ ■ In our original opinion, we erroneously concluded that, as of the time of the trial court's decision, plaintiff had paid all of its attorney fees. It appears from the record, however, that Tan had not paid R & W's bill for November 1979 in full. The bill is clearly itemized by date and sets forth the specific activities performed by the attorneys on that date, including correspondence, phone calls, and conferences, all of which appear to have been necessary and reasonably related to the proposed purchase of defendant's property. In addition, an attorney for R & W testified that she and another R & W attorney worked almost exclusively on the proposed purchase during the entire month of November 1979. She stated that each had spent at least 40 hours per week on it. We note that an attorney's testimony is competent evidence that her fee is reasonable. (See *Sorenson v. Fio Rito* (1980), 90 Ill. App. 3d 368, 376.) Using the attorney's estimate, R & W charged $15,061.50 for a minimum of 320 hours of work, or approximately $47 per hour. We conclude that the fee was reasonable for the necessary work performed and adhere to our original opinion affirming the trial court's award. See *Omni Overseas Freighting Co. v. Cardell Insurance Agency* (1979), 78 Ill. App. 3d 639, 645 (holding that attorney fees must be shown reasonable to be compensable).

Petition for rehearing denied.

REINHARD and NASH, JJ., concur.